KYLE CHRISTOPHER ZOELLNER
Address: ███
███
Telephone: ███
Email: ███

*Pro Se*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

*San Francisco Division*

| | |
|---|---|
| KYLE CHRISTOPHER ZOELLNER, IN PRO SE<br><br>  Zoellner,<br><br>vs.<br><br>CITY OF ARCATA; THOMAS CHAPMAN, individually and in his official capacity as City of Arcata Chief of Police; KAREN DIEMER, individually and in her official capacity as City Manager, City of Arcata; SOFIA PEREIRA, individually and in her official capacity as Vice Mayor; TODD DOKWEILER, individually and in his official capacity as Detective Sergeant for the City of Arcata; ERIC LOSEY, individually and in his official capacity as Detective for the City of Arcata; DEVIN NILSEN individually and in his official capacity as Police Officer for the City of Arcata; KRYSTLE ARMINIO, individually and in her capacity as a Police Officer for the City of Arcata; JACOB MCKENZIE, individually and in his official capacity as Police Officer for the City of Arcata; TOM PARKER, individually and in his official capacity as an Investigator for the City of Arcata, and DOES 1-81, individually and in their official capacities, INCLUSIVE.<br><br>  Defendants. | CASE NO.: 1:18-CV-04471-EMC<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE LAW**<br><br>**1. DENIAL OF EQUAL PROTECTION IN VIOLATION OF THE FOURTEENTH AMENDMENT (42 U.S.C. § 1983)**<br>**2. FALSE ARREST**<br>**2. POLICE MISCONDUCT**<br>**3. DEFAMATION**<br>**4. MEDICAL NEGLIGENCE**<br>**5. PERJURY**<br><br>**JURY TRIAL DEMANDED**<br><br>**JUDGE: HON. EDWARD M. CHEN** |

First Amended Complaint for Violation of Civil Rights and State Law (1:18-Cv-04471-EMC)
- 1

## INTRODUCTION

1. This claim arises out of an incident that took place on Saturday, April 15, 2017 at approximately 3:00 a.m. at 1120 Spear Avenue, in the Arcata, California. Wherein the Plaintiff was unlawfully arrested by Officer Devin Nilsen and booked into the Humboldt County Jail.

2. In the aftermath of the arrest the City of Arcata and the involved Officers falsified and submitted police reports to the District Attorney's office who filed charges based on the falsified reports.

3. During the Plaintiff's time in custody, defaming public statements were made regarding the Plaintiff by the Arcata Police Department, elected officials, and City employees. After the Complaint and all related charges against the Plaintiff were dismissed, the Arcata Police Department, elected officials, and City employees continued to defame the Plaintiff.

## JURISDICTION

4. On May 7, 2018, Plaintiff filed this action in California Superior Court, County of Humboldt. On July 24, 2018, Defendants removed the case to this Court.

5. This Court has assumed jurisdiction under 28 U.S.C. § 1331 and 1341 as this lawsuit includes claims under 42 U.S.C. § 1983 and the United States Constitution, with related state law claims.

6. This is a civil rights action with supplemental state law claims arising from multiple violations of the Plaintiffs' rights under the United States Constitution, California Constitution and laws of the United States and the State of California.

7. This action arises under Title 42 of the United States Code, Section 1983. Title 28 of the United States Code, Sections 1331 and 1343 confers jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in Arcata, California, which is within this judicial district. Title 28 United States Code Section 1391(b) confers venue upon this Court.

## PARTIES

8. The Plaintiff, Kyle Zoellner (hereinafter referred to as "Zoellner"), is a resident of McKinleyville California, is, and at all times herein mentioned is a citizen of the United States. Zoellner resides within the jurisdiction of this Court.

9. Defendant CITY OF ARCATA (hereinafter referred to as "City") and at all times mentioned herein a municipal corporation, duly authorized to operate under the laws of the State of California. Defendant is the legal and political governmental entity responsible for the actions of the Arcata Police Department (hereinafter referred to as "APD") and its officials, agents, and employees including the APD and its City Manager, Karen Diemer.

10. Defendant TOM CHAPMAN (hereinafter referred to as "Chapman") is, and at all times mentioned herein, sued in his individually and official capacity. Or and was acting in the scope and course of his employment at all times mentioned in this complaint. Defendant Chapman directed the APD's administration and operation pursuant to the Arcata Municipal Code and guidelines, customs, policies and practices set by the City. During his period of employment as Defendant City's Chief of Police, Defendant Chapman was responsible for, inter alia, leading and overseeing the investigation of all homicide cases under his jurisdiction; for setting, determining and/or implementing APD customs, polices, practices and procedures applicable to homicide investigations; and for ensuring that APD officers under his authority were appropriately trained and supervised.

11. Defendant KAREN DIEMER (hereinafter referred to as "Diemer") individually and in her official capacity as City Manager for the City of Arcata. Or and was acting in the scope and course of her employment at all times mentioned in this complaint.

12. Defendant TODD DOKWEILER (hereinafter referred to as "Dockweiler"), individually and in his official capacity as Detective Sergeant for the City of Arcata. Or and was acting in the scope and course of his employment at all times mentioned in this complaint.

13. Defendant ERIC LOSEY (hereinafter referred to as "Losey") individually and in his official capacity as Detective for the City of Arcata. Or and was acting in the scope and course of his employment at all times mentioned in this complaint.

14. Defendant DEVIN NILSEN (hereinafter referred to as "Nilsen") individually and in his official capacity as Police Officer for the City of Arcata. Or and was acting in the scope and course of his employment at all times mentioned in this complaint.

15. Defendant KRYSTLE ARMIANO (hereinafter referred to as "Armiano") individually and in her official capacity as Police Officer for the City of Arcata. Or and was acting in the scope and course of her employment at all times mentioned in this complaint.

16. Defendant JACOB MCKENZIE (hereinafter referred to as "McKenzie") individually and in his official capacity as Police Officer for the City of Arcata. Or and was acting in the scope and course of his employment at all times mentioned in this complaint.

17. Defendant SOPHIA PEREIRA (hereinafter referred to as "Pereira") individually and in her official capacity as Vice Mayor. Or and was acting in the scope and course of her employment at all times mentioned in this complaint.

18. Defendant TOM PARKER (hereinafter referred to as "Parker") individually and in his official capacity as Investigator for the City of Arcata. Or and was acting in the scope and course of his employment at all times mentioned in this complaint.

19. Each of the acts complained of was undertaken and each violation of Zoellner's rights occurred pursuant to the unlawful policies, practices, and customs of Defendants, as alleged herein.

20. In connection with the acts complained of herein, each Defendant was acting on behalf of the City of Arcata and/or at the direction of another Defendant on the City's behalf.

21. The acts, omissions and/or misconduct of each Defendant, as alleged herein, were adopted, authorized, ratified, approved, and/or condoned by the relevant policy makers for Defendant City, including but not limited to Defendants Chapman and Diemer.

22. Unless otherwise specified, each of the complained violations of law alleged herein was intentionally committed by Defendants, their officials, agents, and/or employees.

23. Zoellner is ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 81, inclusive, and therefore sue said defendants by such fictitious names. Zoellner will amend this complaint to allege their true names and capacities when ascertained. Zoellner believes and alleges that each of the DOE defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth. Each defendant proximately caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control, violation of public policy and/or use of excessive force. Each defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control or upon any other act or omission. Zoellner will ask leave to amend this complaint subject to further discovery.

First Amended Complaint for Violation of Civil Rights and State Law (1:18-Cv-04471-EMC)
- 4 -

24. In engaging in the conduct alleged herein, defendant police officers acted under the color of law and in the course and scope of their employment with APD. In engaging in the conduct described herein, defendant police officers exceeded the authority vested in them as police officers, under the United States and California Constitutions, and as employees of APD.

25. Zoellner filed a timely claim with the City of Arcata on October 13, 2017 as a pre-requisite to the state law claims alleged herein pursuant to California Government Code § 810, et seq. By correspondence dated November 8, 2017, Zoellner's City governmental tort claim was rejected. This action has been filed within six months of that rejection, as required by law.

## STATEMENT OF FACTS

26. This claim arises out of an incident that took place on Saturday, April 15, 2017 at approximately 03:00 hours at 1120 Spear Avenue, in the City of Arcata, California. Zoellner was at his residence in McKinleyville, CA. Zoellner, who doesn't drink or go out much, was the designated driver was called to pick up his girlfriend and her friends who were attending a party at the above location., Kyle went to the party solely to pick up his girlfriend and her friends and to speak with the owner of the residence to say my girlfriend lost her phone, if you find it will you please contact us. After arriving at the above address, Zoellner approached two men standing outside the front door and politely asked about the phone. These men were later identified as brothers Kyle and Kristoff Castillo. The initial assault took place after the Castillo's got agitated. At that time a third man and his girlfriend came out the front door. In an interview with Paul Mann, Mad River Union, Kyle Castillo said, "That's when me and my brother and Josiah got into it" with Zoellner. Kyle Castillo also said, "it was the three of us against him and he was on the floor". At the preliminary hearing, Kyle Castillo stated, "I think he's knocked out," he told his brother, and he said his brother agreed. Zoellner was assaulted and beaten by the three men and didn't even have a chance to defend himself. One person ran into the house and got others. People poured out of the house and at least 10-15 people joined in and the assault continued. He was unconscious and on the ground in a fetal position with the girls trying to protect Kyle from the barrage of punches and kicks from the assailants.

First Amended Complaint for Violation of Civil Rights and State Law (1:18-Cv-04471-EMC)
- 5 -

27. There were multiple fights that broke out at the party and a person was stabbed. The APD arrived on the scene and without probable cause detained Zoellner at the scene. He was handcuffed and detained at the above location for approximately one and a half hours or more without medical attention.

28. Eric Zoellner, the Plaintiff's father received a call at his residence in McKinleyville, CA from Kyle's girlfriend, Lila Ortega, at 03:23 hours and stated there had been an altercation and Kyle had been assaulted and was in the back of a police car. At the time Eric wasn't aware of the extent of his son's injuries and told Lila to call him back with an update. He was unaware that Kyle was being detained as a suspect. He figured the police were sorting things out and Lila would call him in a bit with an update on the current situation. When Eric Zoellner did not hear back, he called Kyles phone at 03:54 hours and Lila answered it. Lila told Eric Kyle was still detained in the back of the police car, he had been knocked unconscious and was badly injured. Recognizing the seriousness of things, he told Lila he was on his way. Anticipating Kyles condition and need for medical attention, he grabbed an ice pack from his house and stopped at a gas station, filled the ice pack and grabbed a Gatorade. He called Lila again at 04:09 hours to check the status and stated he was driving and would be there in minutes. Upon arrival, approximately 04:20 hours at the location he walked up to the patrol care and visually saw his son in the back seat of the patrol car with Officer Nilsen standing nearby. Kyles face was a bloody mess his was bleeding all over his face his eye was swollen shut, he was partially slumped to the side and appeared to be semi-conscious and in shock, based on his father's observation. When asked if Kyle had any medical treatment, Officer Nilsen stated no, that Kyle had refused medical treatment. Eric responded to Nilsen, I don't care what he said he needs, he needs medical treatment. I don't believe he was able to cognitively make that decision based on his condition and the extent of his injuries. Nilsen asked me if I had anything for Kyle to drink and I retrieved the ice pack and Gatorade and provided it to Nilsen who handed it to Kyle. Kyle was barely able to drink or apply the ice pack on his own. Another 20 minutes passed, and Officer Nilsen stated he was taking Kyle to St. Joseph Hospital for medical care which was another 20-minute drive. Kyle had been in pain and suffering for close to 2 hours.

29. Zoellner was in shock and incapable of making medical decisions for himself causing undue pain and suffering.

First Amended Complaint for Violation of Civil Rights and State Law (1:18-Cv-04471-EMC)

30. Officer Nilsen, under color of authority and in the custody deprived Zoellner of adequate medical care while being detained de facto, violating Zoellner's constitutional rights.

31. A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual (e.g., when the individual is a prisoner or involuntarily committed mental patient)." (Uhlrig v. Harder)

32. In other words, when you assume custody of a person, you also assume the responsibility to take reasonable steps to provide for his or her care and safety and to ensure the person's protection against foreseeable risks. Officer Nilsen did not know the extent of Kyle's injuries and according to witnesses he had been beaten and kicked in the head, face and upper body numerous times by 10 to 15 assailants. A neighbor interviewed by the Journal stated Zoellner, was sitting over in the first driveway off the cul-de-sac, with his girlfriend and a couple other people nearby. "He was just slumped," the neighbor says. "The picture didn't even do it justice. His face was mangled." Officer Nilsen confirmed this in the official police report stating, "Zoellner was being held up by several females. Zoellner appeared dazed. I observed that Zoellner had a swollen right eye with fresh blood emitting from below the right eye socket. Zoellner also had blood emitting from his nose and mouth."

33. Zoellner was placed under arrest and transported to St. Joseph Hospital for medical treatment. Zoellner's father, concerned with the condition of his son, followed Zoellner to the hospital. The father was not allowed to see or speak to his son or hospital staff regarding the condition of his son. After medical clearance he was transported to the Arcata Police Station and interrogated by Sergeant Todd Dokweiler. During that interrogation, Zoellner told police he'd rather take a beating than stab someone, an Arcata police detective testified today. "He said he felt the conflict could be resolved with words," Detective Sgt. Todd Dokweiler testified during the fourth day of Zoellner's preliminary hearing. "And if it couldn't somebody was doing something wrong."

34. He was then transported to the Humboldt County Jail where he was booked for 187 PC. Zoellner was charged by the Humboldt County District Attorney and plead not guilty at the arraignment. After a five-day preliminary hearing and testimony from over 20 witnesses, the Honorable Judge Reinhold found that there was insufficient evidence to hold the defendant and the Court dismissed the Complaint and all related charges against Zoellner and Zoellner was

First Amended Complaint for Violation of Civil Rights and State Law (1:18-Cv-04471-EMC)
- 7

released from custody. During the Zoellner's time in custody, public statements were made by the APD, elected officials, and City employees including Chapman, Dokweiler and Pereira with regards to the alleged charges, asserting the guilt of Zoellner, not only to the heinous crime of premeditated murder, but further stating that it was racially motivated and a hate crime, without knowledge or evidence to that fact.  After the Complaint and all related charges against Zoellner were dismissed, the Arcata Police Department, elected officials, and City employees have continued to defame Zoellner with ongoing statements regarding the guilt of Zoellner and the narrative of racism and relating the event as a hate crime in the public forum.

35. Multiple Police officers including Officer Armiano, Officer McKenzie, Officer Nilsen and APD staff where involved in processing the crime scene and evidence, interviewing witnesses, search warrants and seized property, writing reports and other unnamed functions related to the event.

36. Kyle and his family's lives will never be the same. The damage done by APD and the City is irreversible and irreparable

37. Zoellner alleges that the APD purposely falsified arrest documents and police reports in violation of Zoellner's civil rights. This is a civil rights action with supplemental state law claims arising from multiple violations of Zoellner's rights under the United States Constitution, California Constitution and laws of the United States and the State of California.

38. This action arises under Title 42 of the United States Code, Section 1983. Title 28 of the United States Code, Sections 1331 and 1343.

39. Losey filed a false police report, approved by Dokweiler, with the DA, stating in that report that Jason Martinez had identified Zoellner as the perpetrator. Losey, who interviewed Martinez, admitted to Deputy District Attorney Rees, that he was mistaken when he wrote in his report that Martinez had identified Zoellner. *"Regrettably,"* Losey said, *"that was an error."* The District Attorney charged Zoellner believing, based on a written APD report, there was an eyewitness who named him as the person who stabbed the 19-year-old Lawson.

40. There was no parallel investigation for over a year per Parker, a private investigator, hired by the City.

41. Parker, a private investigator, hired by the City to investigate the case released sensitive case information to the public and other parties.

First Amended Complaint for Violation of Civil Rights and State Law (1:18-Cv-04471-EMC)
- 8 -

42. Public statements by the City and APD, including Chapman, Dokweiler, Pereira, and Parker of Zoellner's guilt and the implication that this crime was a hate crime based on the decedents race. Statements made by the City and APD put Zoellner's life in danger.

43. Zoellner's Civil rights and Victim rights were violated.

44. Illegal search and seizure of Property. The property has still yet to be returned.

45. Everything after the arrest, jailed, charged, search, statements was based on false pretenses and narrative.

## FIRST CAUSE OF ACTION

**42 U.S.C. § 1983 – Denial of Equal Protection in Violation of the Fourteenth Amendment**

(Against All Defendants)

46. Zoellner incorporates by reference paragraphs 1 through 81 above as if fully set forth herein.

47. 42 U.S.C. Section 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

48. Zoellner in this action is a citizen of the United States, and Defendants to this claim are "persons" for purposes of 42 U.S.C. Section 1983.

49. At all times relevant herein, Defendants Chapman, Diemer, Dokweiler, Losey, Nilsen, Arminio, McKenzie, Parker and Pereira were acting under the color of state law in their capacity as Arcata police officers and/or City officials, and their acts and/or omissions as alleged herein were conducted within the scope of their official duties or employment.

50. At all times relevant herein, Zoellner had the clearly established constitutional right under the Fourteenth Amendment to the United States Constitution to enjoy the equal protection of the laws, including but not limited to the full and equal benefit of police and law enforcement services provided by the City of Arcata.

First Amended Complaint for Violation of Civil Rights and State Law (1:18-Cv-04471-EMC)
- 9 -

51. At all times relevant herein, any reasonable police officer and/or city official knew or should have known of these rights, as they were clearly established at that time.

52. Defendants' conduct was undertaken with the purpose of depriving Zoellner of the equal protection and benefits of the law and equal privileges and immunities under the law in violation of the Fourteenth Amendment.

53. Defendants engaged in the acts and/or omissions described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Zoellner's federally protected rights.

54. The acts or omissions of all Defendants were moving forces behind Zoellner's injuries.

55. The acts or omissions of Defendants, as described herein, intentionally deprived Zoellner of his constitutional and statutory rights and caused him other damages.

56. Defendants are not entitled to qualified immunity for the acts and/or omissions alleged herein.

57. At all times relevant hereto, Defendants were acting pursuant to municipal custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Zoellner.

58. As a proximate result of Defendants' unlawful conduct, Zoellner has suffered emotional injuries and other damages and losses as described herein, entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of Defendants' unlawful conduct, Zoellner has incurred special damages, including medically related expenses and may continue to incur further medically and other special damages related expenses, in amounts to be established at trial.

59. On information and belief, Zoellner may suffer damages as a result of the acts and omissions of Defendants as alleged herein, in amounts to be ascertained in trial. Zoellner is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. Section 1988, pre-judgment interest and costs as allowable by federal law.

60. In addition to compensatory, economic, consequential and special damages, Zoellner is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. Section 1983, in that the actions of each of these individual Defendants have

been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional and statutory rights of Zoellner.

## SECOND CAUSE OF ACTION
### (Police Officers Filing False Reports)
CA Penal Code Section 118.1 PC

61. Zoellner re-allege and incorporate by reference paragraphs 1 through 81 of this complaint.

62. In Dokweiler's police report dated 4/21/17 and filed with the District Attorney, Dokweiler states, *"There were no identified witnesses that see Lawson fighting with anyone other than Zoellner in the moments before Wright discovers Lawson was stabbed"* This is a false statement. Multiple witnesses and testimony stated Zoellner was assaulted by at least 10-15 people.

63. In Dokweiler's police report dated 4/21/17 and filed with the District Attorney, Dokweiler states, *"The knife recovered at the scene was a high-quality kitchen utility knife of a type used in the food industry… It should be noted that Zoellner does work at Uniquely Yours Catering as a chef".* This is a misleading and false statement, implying a connection with the knife and the Zoellner because he is professional chef. Zoellner's boss, Alex Begovic, a professional chef with over 30 years' experience, testified today that he was very familiar with Zoellner's knives and the one found at the scene was not one of Zoellner's and not one he would ever use in his business. *"No one uses knives like that in a kitchen,"* Begovic testified brusquely. *"I don't know what you would use a knife like that for."*

64. In Dokweiler's police report dated 4/21/17 and filed with the District Attorney, Dokweiler states, *"Preliminary examinations by California Department of Justice forensic examiners of the knife recovered at the scene, located trace evidence of blood and fibers".* This is a false statement! At the preliminary hearing, May 1-5th, 2017, attorneys agreed to stipulate today that the one distinguishable fingerprint on the knife was not Zoellner's. Fibers found on the knife did not match fibers from Zoellner's clothing.

65. In Dokweiler's police report dated 4/21/17 and filed with the District Attorney, Dokweiler states, *"Based on the witness statement that Lawson was fighting solely with*

First Amended Complaint for Violation of Civil Rights and State Law (1:18-Cv-04471-EMC)
- 11 -

*Zoellner at the time he was stabbed, witness statements that Zoellner was holding an object in his hand that appeared consistent with a knife"*. This is a false statement! Judge Reinholtsen issued the ruling after spending nearly three hours reviewing notes he took during many hours of often-conflicting and confusing testimony at the preliminary hearing. He noted that no-one saw Zoellner with a knife or witnessed the stabbing, and there is no physical evidence linking him to the crime.

66. Detective Losey filed a false police report dated 4/21/17, approved by Dokweiler, and filed with the District Attorney. Losey states in that report that Jason Martinez had identified Zoellner as the suspect. Losey, who interviewed Martinez, admitted to Deputy District Attorney Rees, that he was mistaken when he wrote in his report that Martinez had identified Zoellner. *"Regrettably,"* Losey said, *"that was an error."* The District Attorney charged Zoellner believing, based on a written APD report, there was an eyewitness who named him as the person who stabbed the 19-year-old Lawson.

### THIRD CAUSE OF ACTION

**(Violations of Plaintiffs' Civil Rights to provide necessary medical attention)**

Eighth Amendment rights, pursuant to 42 U.S.C. § 1983.

67. Zoellner re-allege and incorporate by reference paragraphs 1 through 81 of this complaint.

68. This is a civil rights action with supplemental state law claims arising from multiple violations of Zoellner rights under the United States Constitution, California Constitution and laws of the United States and the State of California. Eighth Amendment rights, pursuant to 42 U.S.C. § 1983.

69. Zoellner was detained and in custody but had not been placed under arrest. Officer Nilsen and the person in charge, Dokweiler, had a duty to Zoellner for his safety and care of his person while in custody. This did not happen.

70. Deliberate indifference of a serious medical need The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain. Significant injury, pain or loss of function can constitute "serious medical needs" even if they are not life-threatening. Pain can

constitute a "serious medical need" even if the failure to treat it does not make the condition worse.

71. We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 428 U. S. 173 (joint opinion), proscribed by the Eighth Amendment.

72. Inadequate medical care "the very fact that the risk was obvious. courts will be likely to find a "serious medical need" if a condition "has been diagnosed by a physician as mandating treatment or … is so obvious that even a lay person would easily recognize the necessity of a doctor's attention. A serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.

73. Once a police officer takes a subject into custody that person becomes a prisoner. He or she is now in custody and you are totally responsible for their "care and wellbeing" until such time as you request additional assistance and find other law enforcement, medical healthcare professionals, or mental health professional to assist you or are able to turn the prisoner over to other appropriate public safety professionals.

## FOURTH CAUSE OF ACTION
### (Defamation)
(California Civil section 44)

74. Zoellner re-allege and incorporate by reference paragraphs 1 through 81 of this complaint.

75. Zoellner is informed and believes that on or about April 18, 2017, Chapman made the following defamatory public statement about, of and concerning Zoellner: *"We have a white male who stabbed and killed a black male — I think it's prudent and logical to look at race as an issue, and I think it absolutely is and should be a part of our investigation,"* and APD Chief Tom Chapman said *"it's believed Zoellner received some of the injuries visible in his booking photo prior to stabbing Lawson and some after"*.

76. Zoellner is informed and believes that on or about April 15, 2017, Dokweiler made the following defamatory public statement about, of and concerning Zoellner: *"Numerous*

First Amended Complaint for Violation of Civil Rights and State Law (1:18-Cv-04471-EMC)

witnesses had detained Zoellner and indicated he had stabbed the (v)." and *"Zoellner had admitted he was involved in a physical fight w/ the victim."*

77. Zoellner is informed and believes that on or about April 19, 2017, during a City Council meeting, Pereira made the following defamatory public statement about, of and concerning Zoellner, Pereira stated *"In meeting with students this week, I heard firsthand the fear that students of color have about local racism and for their safety off campus. They know and we know that racial inequities continue to exist. The students expressed concern that I share, that race played a role in the homicide and that we cannot continue to ignore the systemic and cultural racism that exists in our community. While we can say we've been working on issues of equity in our community, we as a community failed Josiah and other students of color, who have stated over and over that they do not feel safe or welcomed here."*

78. Zoellner is informed and believes that on supporting the aforementioned narrative, that Zoellner had committed a racially motivated hate crime, put his life in danger and caused emotional distress, humiliation, and other pain and suffering.

## FIFTH CAUSE OF ACTION
### (Malicious Prosecution)
CA Code 425.10-425.18

79. Zoellner re-allege and incorporate by reference paragraphs 1 through 81 of this complaint.

80. Based on false police reports filed by APD with the District Attorney, Zoellner was charge for crimes he did not commit.

## SIXTH CAUSE OF ACTION
### (False Imprisonment)
California Penal Code Section 236, 237(a) PC

81. Claimant had not committed a crime and was placed under arrest against his will without "probable cause".

**JURY DEMAND**

Plaintiff hereby demands a jury trial.

**PRAYER**

WHEREFORE, Plaintiff prays for relief, as follows:

1. Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;
2. For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;
3. For punitive damages and exemplary damages in amounts to be determined according to proof as to defendants and DOES 1 through 81 and/or each of them;
4. For reasonable attorney's fees pursuant to 42 U.S.C. §1988.

**Dated: April 12, 2019**

                                  Sign Name:   /S/ Kyle C. Zoellner

                                                  In Pro Se

First Amended Complaint for Violation of Civil Rights and State Law (1:18-Cv-04471-EMC)
- 15