UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE CHRISTOPHER ZOELLNER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF ARCATA, et al.,<br><br>Defendants. | Case No. 18-cv-04471-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 84 |

Defendants have moved to dismiss certain claims asserted in Plaintiff Kyle Zoellner's third amended complaint (TAC). The Court held a hearing on the motion on November 12, 2020. This order memorializes the Court's oral rulings and provides additional analysis, as necessary. For the following reasons, the motion is **GRANTED**.

## I.    DISCUSSION

A.   Fourth Cause of Action: Unconstitutional Policy, Custom, or Practice in Violation of § 1983 (the "*Monell*[1] Claim")

"[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or program; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). The Court previously dismissed Mr. Zoellner's *Monell* Claim because he "failed to allege that the City has an official policy that is unconstitutional . . ., a pattern of similar constitutional violations by untrained employees, [or] a total lack of training with consequences

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

that were patently obvious." Docket No. 63 ("MTD Order 1") at 2.

Mr. Zoellner again fails to plausibly allege in his TAC that the City has an official policy that is unconstitutional. He only added vague and conclusory allegations to the TAC that "it was the custom and practice of APD to ignore the Fourth Amendment requirements. It was their policy to incarcerate first and investigate next." TAC ¶ 96. Mr. Zoellner also alleges, in wholly conclusory fashion, "that inaction by a policymaker deliberately indifferent to a substantial risk of harm is equivalent to the intentional action that setting policy of charging a person based on the color of their skin and deliberately ignoring the requirement of probable cause under the Fourth Amendment." *Id.* ¶ 123. These allegations are insufficient to plausibly allege a *Monell* claim. *See AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) ("Our circuit precedent . . . requires plaintiffs in civil rights actions against local governments to set forth no more than a bare allegation that government officials' conduct conformed to some unidentified government policy or custom." (citations omitted)).

Later in the TAC, Mr. Zoellner offers contradictory theories on whether the City has an unconstitutional policy, without offering any factual allegations to support either theory:

> APD **_does not have a policy_** to meet the requirement of probable cause and they simply are seeking to arrest a white guy to claim that they have achieved their goal of solving a crime that involved a black man. This continued deliberate indifference to Plaintiff's constitutional rights has only caused significant harm to plaintiff. At the minimum since April of 2017, **_APD had a policy_** of ignoring the requirement of probable cause and detaining without probable cause. There has been a pattern of deliberate indifference to Plaintiff's constitutional rights by APD from April of 2017 to present. *APD's continuous conduct of disregarding probable cause **is policy and custom** which inflicts injury*. Their practice of detaining without probable cause, knowing probable cause is required for and ignoring it, was so well settled within APD that the policymaking officials have either actual or constructive knowledge of it.

*Id.* ¶ 128 (emphasis added). *See also id.* ¶¶ 178, 185-191, 193-201, 228-29. Importantly, although Mr. Zoellner contends that the City had a "practice of detaining without probable cause," he does not point to a single incident outside of his own arrest to support that contention. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency

and consistency that the conduct has become a traditional method of carrying out policy."). Without alleging other examples outside of his own experience, Mr. Zoellner cannot plausibly allege that Defendants have a policy or practice of violating criminal suspects' Fourth Amendment rights. Although Mr. Zoellner contends there was a pattern of misconduct occurring *within* his case involving multiple participants within the Defendants' police department, he has not demonstrated how that implicates a general department policy that transcends this single case.

Similarly, Mr. Zoellner offers no factual allegations in the TAC, whatsoever, to plausibly allege that the constitutional violation he allegedly suffered was a result of the City's failure to train its police officers. The Supreme Court has clearly held that

> In resolving the issue of a city's liability, the focus must be on ***adequacy of the training program in relation to the tasks the particular officers must perform***. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . ***Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training***, sufficient to equip him to avoid the particular injury-causing conduct.

*City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989) (emphasis added). Here, the TAC only alleges, albeit repeatedly, that the City "had longstanding policies, customs, or practices of failing to train its law enforcement personnel." TAC ¶ 177. See also TAC ¶¶ 179, 181, 183,185, 221. The TAC does not allege that the Defendant officers were inadequately trained in relation to the tasks they were expected to perform. The TAC does not allege any facts to plausibly allege, *e.g.*, a pattern of similar constitutional violations which should have triggered training, *see Williams v. Cnty of Alameda*, 26 F. Supp. 3d 925, 946 (N.D. Cal. 2014) (citing *Connick v. Thompson*, 563 U.S. 51, 63 (2011)), that the consequences of the Defendant's lack of training were patently obvious, *see Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997), or that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," *Harris*, 489 U.S. at 388.

Finally, Mr. Zoellner alleges that Defendant "Chief Chapman was aware of the lack of probable cause and false documents and failed to prevent their submission and . . . ratified these constitutional violations by condoning, permitting and encouraging them." TAC ¶¶ 216–17.

1    Although wholly conclusory, this allegation indicates that Mr. Zoellner is also attempting to allege

2    a *Monell* Claim based on Chief Chapman's ratification of unconstitutional practices on behalf of

3    the City.  *See St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("If the authorized policymakers

4    approve a subordinate's decision and the basis for it, their ratification would be chargeable to the

5    municipality because their decision is final"); *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d

6    1143, 1151 (9th Cir. 2011) ("Liability will lie against a municipal entity under § 1983 only if a

7    plaintiff establishes. . . that the injury was caused or ratified by an individual with 'final policy-

8    making authority.'" (quoting *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th

9    Cir.2008)).

10   There are two problems with Mr. Zoellner's allegations that Chief Chapman ratified the

11   alleged constitutional violations Mr. Zoellner suffered.  First, they are levied only in the fifth

12   cause of action, which is for supervisor liability against Chief Chapman, not in the Fourth cause of

13   action for *Monell* liability against the City.  Second, and more importantly, Mr. Zoellner does not

14   adduce sufficient facts to plausibly allege (1) that Chief Chapman had "final policy making

15   authority," *id.*, and (2) that he "consciously chose[ to ratify the allegedly unconstitutional conduct]

16   from among various alternatives," *Barone v. City of Springfield*, 902 F. 3d 1091, 1107 (9th Cir.

17   2018) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985)).  Without specific

18   allegations as to these two elements, the City cannot be held liable for Chief Chapman's alleged

19   ratification of unconstitutional conduct under *Monell*.

20   Accordingly, the Court grants the motion to dismiss the *Monell* Claim.  However, Mr.

21   Zoellner shall have thirty (30) days to file an amended complaint addressing the deficiencies of his

22   *Monell* Claim based on ratification only.

23   B.   <u>Seventh Cause of Action: Class-of-One Equal Protection Claim (the "Class-of-One

24   Claim")</u>

25   The Supreme Court has recognized class-of-one equal protection claims "where the

26   plaintiff alleges that she has been intentionally treated differently from others similarly situated

27   and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*,

28   528 U.S. 562, 564 (2000).  The Court previously dismissed Mr. Zoellner's Class-of-One Claim

4

because he "simply made a conclusory allegation that others similarly situated were treated differently with no supporting facts." MTD Order 1 at 3. The Court also noted that Mr. Zoellner "failed to allege that [the other people involved in the fight] were similarly situated [because] they were friends with the victim . . . and there is no allegation that witnesses inculpated any of them." *Id.* at 4.

Mr. Zoellner has failed to address the deficiencies of his Class-of-One Claim in the TAC. First, Zoellner does not explain how he is similarly situated to the other people involved in the violent incident that resulted in his arrest. Rather, he contends that "mere alleged friendship or knowing someone cannot be a reason not to investigate or eliminate a suspect." TAC ¶ 228. In other words, Mr. Zoellner appears to admit in the complaint that the Defendant officers had reasons to arrest him and not the other parties present at the stabbing (based, *e.g.*, on the fact that others were friends of the victim), he simply contends that those reasons are unjustified. The problem with this argument is that under a rational basis standard, as this Court found in its prior dismissal order, identifying the other participants in the incident as the victims' friends means that Defendant officers had reason to believe these individuals did "not have a motive to stab [the victim] (particularly eight times)." MTD Order 1 at 3.

Moreover, the TAC lays out facts that set Mr. Zoellner apart from the other potential suspects: he had engaged in a fight with Lawson that resulted in Lawson's stabbing, he was a caterer who owned professional chef knives, he was covered in Lawson's blood, and several witnesses identified him as having been in a fight with the victim. *Id.* ¶¶ 39-40, 59, 72, 91, 152. Therefore, Defendant officers had at the very least some reasons to arrest Mr. Zoellner and not any of the other fifteen individuals he claims should have also been arrested. In other words, the TAC fails to plausibly allege that Mr. Zoellner was similarly situated to other persons present at the scene of the crime and yet was irrationally singled out for arrest.

The Court therefore dismisses Mr. Zoellner's Class-of-One Claim without leave to amend.

///

///

///

5

## II. CONCLUSION

For the foregoing reasons, the City's motion to dismiss is **GRANTED**. More specifically, the Court dismisses Mr. Zoellner's *Monell* Claim (with leave to amend within thirty (30) days) and the Class-of-One claim (without leave to amend).

This order disposes of Docket No. 84.

**IT IS SO ORDERED**.

Dated: November 23, 2020

_____
EDWARD M. CHEN
United States District Judge