UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE CHRISTOPHER ZOELLNER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF ARCATA, et al.,<br><br>Defendants. | Case No. 18-cv-04471-EMC   (DMR)<br><br>**ORDER ON MOTION TO COMPEL**<br>Re: Dkt. No. 111 |

Plaintiff Kyle Zoellner alleges civil rights claims under 42 U.S.C. § 1983 against Defendants City of Arcata ("City"), several City officials, and several City police officers. [Docket No. 106, Fifth Amended Complaint ("5AC").] On January 8, 2021, Plaintiff issued a subpoena to the District Attorney for the County of Humboldt ("DA"). The DA did not respond. Plaintiff now moves to compel compliance with the subpoena. [Docket Nos. 111 ("Mot."), 129 ("Reply").] The DA filed a notice of non-opposition. [Docket No. 124.] Defendants oppose. [Docket No. 126 ("Opp.").] The court held a hearing on May 27, 2021, which the DA attended as an interested third party.

For the reasons stated below, the motion is granted subject to the conditions described below.

I.   **BACKGROUND**

A.   **Allegations and Claims**

The following facts are alleged in the 5AC. On April 15, 2017, Plaintiff was involved in a physical altercation with Josiah Lawson. 5AC ¶¶ 37-46. The fight took place at a house party and involved at least 15 other people. *Id.* ¶ 46. Lawson and others allegedly beat Plaintiff to the point of unconsciousness. *Id.* At some point during the night, Lawson was stabbed with a knife and died. *Id.* ¶ 58. Defendant Devin Nilsen, an officer of the Arcata Police Department ("APD"), arrived on scene and promptly arrested Plaintiff, even though Plaintiff was injured and only semi-conscious. *Id.* ¶ 76. Plaintiff alleges that Nilsen did not have any physical evidence, eyewitness testimony, or

other probable cause to arrest him. *Id.* Nilsen allegedly did not interview any witnesses before detaining Plaintiff. *Id.* ¶ 77. Nilsen also did not call for medical help even though Plaintiff was severely injured. *Id.* ¶ 76. Defendant Todd Dokweiler, an Arcata detective, eventually interviewed Plaintiff while he was detained. *Id.* ¶ 78. Plaintiff told Dokweiler that he was unconscious at the time Lawson was stabbed and was not near him. *Id.* Plaintiff was nevertheless arrested as a murder suspect. *Id.* According to Plaintiff, none of the witnesses on scene positively identified him as the person who stabbed Lawson. *See id.* ¶¶ 79-81. The responding officers allegedly did not secure the scene or evidence and allowed people to leave without identifying or interviewing them. *Id.* ¶ 84. In the subsequent investigation, Defendants failed to investigate other leads and ignored potentially exculpatory evidence, including that fibers found on the knife did not match Plaintiff's clothing. *Id.* ¶ 91.

Defendants caused criminal charges to be filed against Plaintiff.[1] 5AC ¶ 89. After a five-day preliminary hearing, the state court judge dismissed the charges for lack of probable cause. *Id.* ¶ 124. Even after the charges were dismissed, APD continued to investigate Plaintiff. *Id.* ¶ 125. Defendants contacted the Department of Justice and California's Attorney General for assistance. *Id.* ¶ 128. The investigation focused only on Plaintiff and Defendants did not involve any other suspects. *Id.* The investigation did not turn up additional evidence and the Attorney General declined to bring charges against Plaintiff. *Id.* ¶ 128. On February 28, 2019, the DA's office convened a grand jury to charge Plaintiff with Lawson's murder. *Id.* ¶ 129. The grand jury declined to indict Plaintiff. *Id.* ¶ 130. The DA's office again asked the AG's office to investigate or charge Plaintiff, but the AG's office declined to do so. *Id.*

Defendants allegedly continue to assert that Plaintiff is under investigation for Lawson's murder and that he is the sole suspect. 5AC ¶ 132. According to Plaintiff, Defendants have demanded that he drop this case or he will face criminal charges again. *Id.* ¶¶ 133-34. Plaintiff asserts that Defendants' continued investigation despite the lack of evidence is "simply a trial strategy to bully Plaintiff into dropping his lawsuit." *Id.* ¶ 142. Plaintiff brings claims for unlawful

---

[1] The 5AC alleges that a Defendant officer and other officers "filed criminal charges" against Plaintiff. 5AC ¶ 89. It is not clear whether Plaintiff means that the officers referred the case to the DA to file charges.

arrest; malicious prosecution; deliberate indifference to serious medical needs; defamation; and wrongful threat of criminal prosecution.[2]

### B. The Current Dispute

On January 8, 2021, Plaintiff issued a subpoena to the Humboldt County DA's office. [Docket No. 111-1, Declaration of Elizabeth Zareh ("Zareh Decl.") ¶ 3.] The subpoena requests documents relating to the grand jury proceedings in February and March 2019, including transcripts, documents, exhibits, photographs, and recordings. Zareh Decl, Ex. 1, Subpoena. The DA did not comply with the subpoena. *Id.* ¶ 4. Plaintiff applied to the Humboldt County Superior Court for an order of disclosure. *Id.*; *see* Mot. at 2. On February 1, 2021, the state court denied the requested relief, finding that it did not have "broad inherent power to order disclosure of grand jury materials to private litigants." Zareh Decl., Ex. 2, State Court Order.

Plaintiff then filed a motion to compel in this court, arguing that "federal courts are governed by different, broader standards regarding the enforcement of subpoenas seeking information from Grand Jury proceedings." Mot. at 2. Maggie Fleming, the Humboldt County District Attorney, filed a notice of non-opposition to the motion. [Docket No. 124.] However, if the court orders production, she requests that the grand jury documents and exhibits be subject to the protective order in place in this case. *Id.* She also requests permission to redact the names of the witnesses who marked exhibits. *Id.* Defendants oppose Plaintiff's motion, arguing that Plaintiff has not met his burden to show that disclosure of confidential grand jury materials is warranted.

## II. DISCUSSION

### A. Legal Standard for Disclosure of Grand Jury Materials

Under the Federal Rules of Criminal Procedure, grand jury proceedings generally remain secret. Fed. R. Crim. P. 6(e)(2); *see also United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958) (acknowledging "a long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts"). However, district courts "may authorize disclosure--at a time, in a manner, and subject to any other conditions that it directs--of a grand-jury matter . . . preliminarily to or in connection with a judicial proceeding . . . ." Fed. R. Crim. P. 6(e)(3)(E)(i).

---

[2] Judge Chen dismissed Plaintiff's other claims. [Docket No. 131.]

Disclosure of grand jury proceedings is appropriate "only in those cases where the need for it outweighs the public interest in secrecy." *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979). A party seeking disclosure must show "[1] that the material they seek is needed to avoid a possible injustice in another judicial proceeding, [2] that the need for disclosure is greater than the need for continued secrecy, and [3] that their request is structured to cover only material so needed." *Id.* at 222. A court should order disclosure of grand jury transcripts "only when the party seeking them has demonstrated that a particularized need exists which outweighs the policy of secrecy." *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (cleaned up). However, the requesting party's burden diminishes as "the considerations justifying secrecy become less relevant." *Douglas Oil Co.*, 441 U.S. at 223. The district court is "vested with substantial discretion in assessing a request for disclosure under Rule 6(e)." *In re Grand Jury Proc.*, 62 F.3d 1175, 1180 (9th Cir. 1995).

The parties do not address the issue, but a complication presented in this case is that Plaintiff seeks documents that are part of a state (not federal) grand jury proceeding and therefore may be subject to state law privileges. *See Goldstein v. Superior Ct.*, 45 Cal. 4th 218, 221 (2008) (examining state law limitations on the disclosure of grand jury materials). The Ninth Circuit has not yet reviewed the issue of whether and to what extent federal courts can order the disclosure of state grand jury materials. However, at least one California district court has held that federal courts may refer to Rule 6(e) in deciding whether to order the disclosure of state grand jury materials. *Goldstein v. City of Long Beach*, 603 F. Supp. 2d 1242, 1251 (C.D. Cal. 2009) ("*Goldstein II*"). The Fourth, Seventh, and Tenth Circuits have reached the same conclusion. *See United States v. Silva*, 745 F.2d 840, 845 (4th Cir. 1984) (finding that Rule 6(e) "provides an appropriate framework" for analyzing the production of state grand jury materials in federal proceedings); *Socialist Workers Party v. Grubisic*, 619 F.2d 641, 643 (7th Cir. 1980) ("[B]ecause the plaintiffs' claims arise under federal law, the privileged nature of these [grand jury] materials under Illinois law is not controlling."); *U.S. ex rel. Woodard v. Tynan*, 757 F.2d 1085, 1090 (10th Cir.) (opining that it is appropriate to apply Rule 6(e) principles "by analogy" to state grand jury proceedings "because Rule 6(e) embodies the federal policy favoring secrecy of federal or state grand jury records"). These decisions align with

the broader rule that federal law governs claims of privilege unless state law supplies the rule of decision. *See* Fed. R. Evid. 501. Persuaded by the reasoning articulated in this body of cases, the court will analyze Plaintiff's motion under Rule 6(e) and the *Douglas Oil* factors.

A final consideration must be addressed. Several of the cited cases recognized that federal courts must consider principles of comity in ordering disclosure of materials protected by state law privileges. *See Silva*, 745 F.2d at 845 ("[W]e are bound by principles of comity to accord state grand jury proceedings at least a qualified privilege."); *Grubisic*, 619 F.2d at 643 ("[A] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." (quotation omitted)); *Goldstein II*, 603 F. Supp. 2d at 1250 (same). The Seventh Circuit in *Grubisic* determined that, at minimum, "notions of comity between the state and federal courts require that the plaintiffs first seek disclosure in the state court with supervisory powers over the grand jury." *Grubisic*, 619 F.2d at 643. The court noted, however, that requiring parties seeking disclosure to first pursue their request before the state court "does not give the state courts a veto over disclosure" in a federal proceeding. *Id.* at 644 ("[A]lthough the state court may determine that the materials are privileged under state law, only the federal court may determine whether the materials are privileged under federal common law."). Instead, that process "is designed merely to forestall unnecessary intrusion by the federal courts in state grand jury proceedings or, at least, to ensure that the important state interest in secrecy is thoroughly considered." *Id.*

Here, Plaintiff first applied to the Humboldt County Superior Court for an order disclosing the requested materials. The state court declined the request. Zareh Decl., Ex. 2. It noted that California state courts may only order disclosure of grand jury materials to private litigants in circumstances specifically authorized by statute. *Id.* The court determined that there did not appear to be any statutory exceptions applicable to Plaintiff's request and concluded that "[t]he issue of Plaintiff's entitlement to disclosure is not one to be determined by this Court." *Id.* The court finds that the state court has been accorded the comity it is due. *See Goldstein*, 603 F. Supp. 2d at 1247-48. The state court had the opportunity to review Plaintiff's request and consider his arguments in favor of disclosure. It also had the opportunity to raise any concerns about the necessity of

maintaining secrecy over the requested materials and did not make any findings relevant to the subject matter of the requested documents. *See* Zareh Decl., Ex. 2. Accordingly, comity does not weigh against granting Plaintiff's motion.

**B.     Analysis**

A party seeking disclosure of grand jury materials under Rule 6(e) must show "[1] that the material they seek is needed to avoid a possible injustice in another judicial proceeding, [2] that the need for disclosure is greater than the need for continued secrecy, and [3] that their request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222. The requesting party's burden diminishes as "the considerations justifying secrecy become less relevant." *Id.* at 223.

**1.     Avoidance of Injustice**

The first *Douglas Oil* factor requires the person requesting disclosure to show that "the material they seek is needed to avoid a possible injustice in another judicial proceeding." *Douglas Oil*, 441 U.S. at 222.

Plaintiff's central claim is that Defendants have unjustifiably continued investigating him even after it became apparent that there is no physical evidence or witness testimony linking him to Lawson's death. He argues that the requested information "will directly address the strength of the charges, why no indictment was elicited and what evidence remained that supported continued persecution of Plaintiff – issues all at the heart of this cause of action." Mot. at 4. Defendants contend that disclosure is not warranted because (1) Defendants' alleged misconduct took place prior to the grand jury proceedings and (2) Defendants did not conduct the grand jury proceeding. Opp. at 4.

Defendants first argue that their alleged misconduct took place near the time of Lawson's death in April 2017 and therefore the evidence presented to the grand jury nearly two years later is not relevant to Plaintiff's claims against them. This is not compelling. Plaintiff alleges that Defendants' misconduct is ongoing because they continue to investigate him despite the fact that there is no physical evidence or testimony implicating him in Lawson's death.[3] The grand jury

---

[3] As Plaintiff highlighted at the hearing, the 5AC explicitly pleads that "to this day, [APD] continues to identify and pursue Plaintiff as a suspect despite" the lack of evidence against him. 5AC ¶ 105.

1 materials could provide information that is relevant to Defendants' past alleged misconduct, including whether Defendants unjustifiably failed to follow leads or investigate other suspects. The requested information could also shed light on whether there was a dearth of evidence against Plaintiff that did not warrant a continued investigation.

Defendants' second argument is that the grand jury materials are irrelevant because the DA, not Defendants, conducted the grand jury proceedings. This too is unconvincing. One of Plaintiff's theories is that Defendants lacked sufficient evidence to pursue an investigation against him and that the materials presented to the grand jury will show the paucity of the evidence. Information presented to the grand jury might also reveal that there were leads that Defendants did not follow. In other words, Plaintiff is seeking the grand jury materials to show how Defendants mishandled the investigation; the fact that Defendants did not conduct the grand jury proceedings is irrelevant.

The court finds that Plaintiff has met his burden to demonstrate that the production of grand jury materials is needed to avoid injustice in this case. The documents may show the extent of evidence against Plaintiff at the time the grand jury convened or that Defendants unreasonably refused to investigate other leads. Both theories go to the heart of Plaintiff's claims for unlawful arrest and malicious prosecution.

Accordingly, the first *Douglas Oil* factor weighs in favor of granting Plaintiff's motion.

### 2. Need for Disclosure Versus Need for Secrecy

The second *Douglas Oil* factor weighs the need for disclosure against the need for continued secrecy. Under Ninth Circuit caselaw, five considerations are relevant in deciding the need for secrecy in a given case:

> (1) the need to prevent the escape of prospective indictees; (2) the need to insure freedom to the grand jury in its deliberations; (3) the need to prevent subornation of perjury and tampering with witnesses by targets of the investigation; (4) the need to encourage free disclosure by witnesses before the grand jury; and (5) the need to protect those exonerated by the grand jury from disclosure of the fact that they were under investigation.

*In re Grand Jury Proc.*, 62 F.3d at 1180 n. 2. Where, as here, the grand jury proceedings at issue have concluded, the importance of the first three considerations is "insignificant." *Id.*

The fourth consideration requires courts to consider the "possible effect upon the functioning

of future grand juries" because "[f]ear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties." *Douglas Oil*, 441 U.S. at 222. This factor considers whether prospective witnesses "would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony." *Id.* at 219. Further, "witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements." *Id.* The possibility of a deterrent effect on future grand juries is diminished if the identity of witnesses is not revealed.

At the hearing, DA Fleming represented that 25 witnesses participated in the grand jury proceedings. Plaintiff's counsel stated that discovery in this case revealed at least 17 witnesses who appeared at the preliminary hearing in open court, many if not all of whom may have also appeared before the grand jury. This means that Plaintiff's counsel may not be aware of the identities of all the grand jury witnesses. The witnesses currently unknown to Plaintiff's counsel are at a somewhat higher risk of being deterred from giving full testimony in future grand jury proceedings if they learn that their identities were revealed to lawyers representing the target of the investigation. It is worth noting that defense counsel and DA Fleming both stated that there are no current plans to recharge Plaintiff or reconvene a grand jury regarding Lawson's murder.[4]

DA Fleming also represented that although she could not voluntarily produce the names of those witnesses because of various state privileges, she would comply with a federal court order. She requested that any order requiring production state that the disclosed materials are subject to the parties' protective order. She did not otherwise object to producing grand jury proceedings pursuant to an order by this court. Defendants' counsel offered only general privacy and secrecy concerns about disclosing the identities of witnesses and did not explain any particular concerns relevant to this case, including any concerns impacting his clients.

Upon considering the parties' arguments and the relevant authority, the court finds that any concerns about the need for secrecy with respect to currently private witness names can be

---

[4] DA Lawson represented that the emergence of new evidence may, of course, result in further grand jury proceedings.

adequately addressed by a tailored production, all subject to the protective order entered in this case. The DA shall redact the names of all witnesses who were not made known to Plaintiff through discovery. Plaintiff may move to reveal those names upon a showing of good cause. For the witnesses already known to Plaintiff, the DA will produce documents naming those witnesses without redaction. This tailored production process is described further in Section C, below. These measures adequately address any potential adverse effects on future grand jury proceedings regarding the Lawson murder, particularly given that the DA does not object to disclosing the grand jury materials pursuant to the procedures described below and because there is no definite plan to reconvene a grand jury to investigate Plaintiff.

The fifth factor considers the potential effects of disclosure on the person(s) subject to investigation. Given that Plaintiff is requesting the disclosure of records relating to the investigation against him, the fifth factor does not weigh against disclosure. DA Fleming confirmed at the hearing that the grand jury deliberations only focused on Plaintiff, which obviates any concern about revealing the identities of other suspects.

The court concludes that, subject to the protective measures discussed below, there are at most minimal confidentiality concerns about the requested materials and Plaintiff's need for disclosure outweighs the need for continued secrecy.

### 3. Structured Request

The third *Douglas Oil* factor requires the person seeking grand jury materials to show that "their request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222. As described above, Plaintiff is seeking all grand jury material under the theory that it will reveal the paucity of evidence against him and/or that Defendants unreasonably failed to investigate other leads. While the request is broad, the competing secrecy concerns are minimal given the tailored production process described in the following section. Thus, this factor weighs in favor of granting Plaintiff's motion.

### C. Production Procedures

Consistent with the above analysis, the court orders as follows:

1. Plaintiff shall create a list of the witnesses whose identities have been

9

revealed through discovery in this case. Plaintiff shall not list any names that he discovered through his independent investigations and have otherwise not been part of the parties' exchanges in this case.

2. Plaintiff shall meet and confer with DA Fleming's office so that DA Fleming may identify the witnesses that are currently unknown to Plaintiff.

3. The DA shall produce all grand jury materials and redact any names not identified in Plaintiff's witness list, except for the names of any law enforcement witnesses, which shall be produced without redaction. The court finds that any concern regarding deterrence in providing full grand jury testimony is minimal with respect to law enforcement personnel. The produced documents shall be subject to the parties' protective order.

4. The DA shall also produce the contact information for the court reporter who recorded the proceedings. If Plaintiff orders transcripts of the proceedings, he shall direct the reporter to produce the transcripts to the DA's office only. The DA shall review the transcripts and redact the names of any witnesses not identified in Plaintiff's witness list and then produce the redacted transcripts to Plaintiff.

5. Plaintiff may move to reveal the identities of other witnesses upon a showing of good cause.

### III.    CONCLUSION

For the reasons stated above, the court grants Plaintiff's motion to compel. The DA shall produce documents responsive to Plaintiff's subpoena by no later than **June 28, 2021,** consistent with the process laid out above.

**IT IS SO ORDERED.**

Dated: June 14, 2021



Donna M. Ryu
United States Magistrate Judge

10