UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE CHRISTOPHER ZOELLNER,<br><br>             Plaintiff,<br><br>       v.<br><br>CITY OF ARCATA, et al.,<br><br>             Defendants. | Case No. 18-cv-04471-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION AND TO AMEND COMPLAINT**<br><br>Docket No. 201 |

Currently pending before the Court is Plaintiff Kyle Christopher Zoellner's motion for leave to file a motion for reconsideration and to amend the operative fifth amended complaint ("5AC"). Having considered the parties' briefs, the Court hereby **DENIES** the motion for leave to file a motion for reconsideration and **DENIES** the motion for leave to amend.

## I.     DISCUSSION

Previously, the Court dismissed with prejudice Mr. Zoellner's § 1983 claims against the City of Arcata ("City") as well as his § 1983 claims against individual defendants predicated on supervisory liability. *See* Docket Nos. 93, 131 (orders). In the pending motion, Mr. Zoellner asks for leave to file a motion for reconsideration so that he can file new *Monell* and supervisory claims, as well as a new § 1983 claim for fabrication of evidence and a new claim for fraud against Det. Sgt. Dokweiler and Det. Losey. Mr. Zoellner argues that these claims should be permitted because "Defendants have recently admitted in discovery that [1] evidence sufficient to convince the prosecutor to charge [Mr. Zoellner] was fabricated by two City of Arcata detectives and that [2] this was due, in part, to a failure to train." Mot. at 2.

A.     *Monell* Claim

The Court begins with the *Monell* claim against the City.  Mr. Zoellner's motion for relief turns on whether "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order[s] from which reconsideration is sought."  Civ. L.R. 7-9(b)(1).  He must also "show that in the exercise of reasonable diligence [he] did not know such fact or law at the time of the interlocutory order[s]."  Civ. L.R. 7-9(b)(1).

According to Mr. Zoellner, he recently learned, through the deposition of Chief Chapman, that Det. Losey fabricated evidence in his police report (*i.e.*, that a witness, Mr. Martinez, saw Mr. Zoellner stab the victim) as a result of a failure to train.  Below are the relevant excerpts from the deposition:

> Q.     So when you learned about this, did you take any steps at all to – to somehow discipline Officer Losey about what he did?
>
> . . . .
>
> A.     . . . . I don't think that "discipline" is the right word, but yes.
>
> Q.     What did you do?
>
> A.     I talked to Lieutenant Dokweiler about the issue and, if I remember correctly, either directed him to address it or he had already addressed it.
>
> Q.     And what do you mean by that?
>
> A.     Speak with Officer Losey and try to make a determination – I'm sorry, that's not a good way to say that.
>
> A better way to say this is, Dokweiler and I had a conversation where I had instructed Dokweiler to deal with the issue.
>
> Q.     And what does that mean, "deal with the issue"?
>
> A.     Try to determine – and these are my words, I don't remember the exact words in the conversation. . . .
>
> . . . .
>
> A.     . . . . Try to make a determination **is this a training issue** or is this intentional misconduct – and these are my words, I don't think I specifically said that to him – did the officer make a mistake, an honest mistake, or did the officer do something intentional, and that was Dokweiler's responsibility or job – I don't know what the right word was or is – to figure that out.

2

| | |
|---|---|
| Q. | And do you know if he did that? |
| A. | I don't specifically recall, other to say, yes, I'm sure he did it because he was instructed to do it, and that **it was a training issue more than anything else**. It was not the intentional misconduct on the part of the officer. |
| Q. | Is that something that you learned from Dokweiler or is that something that you concluded on your own? |
| A. | It would have been something I learned from Dokweiler. |

Zareh Decl., Ex. 3 (Chapman Depo. at 81-82) (emphasis added).

The problem for Mr. Zoellner is that, even if this were newly discovered evidence, it is not material evidence. Although Chief Chapman referred to a "training issue" – which the Court liberally interprets as a failure to train – that testimony by itself is not enough to support a failure-to-train theory for *Monell* purposes. As the Court noted in one of its prior orders:

> A failure to train in and of itself does not establish *Monell* liability. Rather, "the need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010). As the Supreme Court explained in *Connick v. Thompson*, 131 S. Ct. 1350 (2011), "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train"; "in a narrow range of circumstances," the unconstitutional consequences of failing to train could be "so patently obvious" that a municipality could be liable under § 1983 without proof of a pre-existing pattern of violations – these "circumstances" generally involve incidents arising from a total lack of training, not simply an assertion that a municipal employee was not trained about "the specific scenario related to the violation." *Id.* at 1360, 1363.

Docket No. 131 (Order at 6).

To the extent Mr. Zoellner has tried to bolster his position through new allegations in the proposed sixth amended complaint ("6AC"), he fares no better. For example, Mr. Zoellner alleges that, prior to Det. Losey's fabrication of evidence, "City of Arcata police officials had previously fabricated evidence – either through mistake or intention." Prop. 6AC ¶ 211. However, this allegation is entirely conclusory in nature. No specific facts describing previously fabrications are alleged. Likewise, the allegation that "[n]o training was provided by the City of Arcata to prevent fabrication of evidence before . . . Detective Losey fabricated evidence about Zoellner" is

3

conclusory. Prop. 6AC ¶ 216.

Finally, the Court notes that Mr. Zoellner has also suggested that there is *Monell* liability because, *after* Det. Losey allegedly fabricated evidence, he was never disciplined or even trained. *See, e.g.*, Zareh Decl., Ex. 1 (Dokweiler Depo. at 184) (testifying that Det. Losey was not put on administrative leave). This, however, is not a failure-to-train theory but rather, if anything, a ratification theory. And here the problem for Mr. Zoellner is that the final policymaker for the City – presumably, Chief Chapman[1] – must have *approved* the fabrication of evidence in order for there to be ratification. *See Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) ("'To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'"). But as indicated by the deposition testimony from Chief Chapman above, Chief Chapman believed that there was *not* intentional misconduct on the part of Det. Losey. There is no evidence that Chief Chapman knowingly approved and thus ratified the fabrication.

Accordingly, the Court denies the motion for leave to reconsider to the extent Mr. Zoellner seeks to add a *Monell* claim against the City.

B.      Supervisory Claim

Likewise, the Court denies the motion for leave to reconsider to the extent Mr. Zoellner asks to add a supervisory claim (under § 1983) against City Manager Diemer and/or Chief Chapman. As to City Manager Diemer, there is no plausible basis for Mr. Zoellner's suggestion that she was a supervisor with respect to, *e.g.*, the discipline or training of police officers. As to Chief Chapman, he could be held liable only if he were personally involved in the constitutional deprivation or if there were a sufficient causal connection between his allegedly wrongful conduct and the constitutional violation (*e.g.*, setting in motion a series of acts by others or knowingly refusing to terminate a series of acts by others which he knew or should have known would cause others to inflict a constitutional injury). *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

---

[1] To the extent Mr. Zoellner suggests City Manager Diemer was the final policymaker for the City with respect to discipline, training, and/or supervision of police officers, he has failed to articulate a plausible basis for that suggestion. *See* Mot. at 11.

4

1    But Chief Chapman was not personally involved in the alleged fabrication of evidence.
2    Furthermore, there is not a causal connection between his alleged misconduct and the alleged
3    fabrication of evidence. Mr. Zoellner contends that Chief Chapman did not investigate the
4    fabrication of evidence by Det. Losey; however, even assuming Chief Chapman did not
5    investigate, or at least that he did not sufficiently follow up with Det. Dokweiler to ensure that
6    there was an investigation,[2] this conduct was all *after* the fact. Thus, Chief Chapman could not
7    have caused Mr. Zoellner's constitutional injury. *See, e.g.*, *Kaur v. City of Lodi*, 263 F. Supp. 3d
8    947, 985-86 (E.D. Cal. 2017) (stating that "[a] single 'inadequate investigation following the
9    subject incident will not sustain a claim of municipal liability, because the after-the-fact
10   inadequate investigation could not have been the legal cause of the plaintiff's injury,'" and "[t]he
11   same is true where the plaintiff seeks to impose liability on a policymaker in his individual
12   capacity on a ratification theory").

13   Accordingly, there is no material newly discovered evidence to support Mr. Zoellner's
14   motion for relief, whether as to City Manager Diemer or Chief Chapman.

15   C.   <u>Fabrication-of-Evidence and Fraud Claims</u>

16   Finally, the Court turns to Mr. Zoellner's proposed new claims for fabrication of evidence
17   (§ 1983) and fraud – both of which are asserted against Det. Sgt. Dokweiler and Det. Losey. For
18   these claims, the Court does not see the procedural posture as a motion to reconsider; rather, Mr.
19   Zoellner is simply making a motion for leave to amend. Thus, Rule 15 governs rather than Civil
20   Local Rule 7-9(b)(1). *See generally Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)
21   (noting that five factors are generally considered in assessing a motion to amend under Rule 15 –
22   *i.e.*, bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether
23   the plaintiff has previously amended the complaint).

24   Even applying the liberal standard of Rule 15, the Court denies leave to amend. With
25   respect to the § 1983 claim, Mr. Zoellner has unduly delayed in raising the claim against Det. Sgt.

---

[2] As indicated above, Chief Chapman's testimony was that he *did* direct Det. Sgt. Dokweiler to look into the issue with Det. Losey, and Chief Chapman was informed that there was no intentional misconduct on the part of Det. Losey.

Dokweiler and Det. Losey. As Defendants note in their opposition brief, Mr. Zoellner alleged that Det. Losey fabricated evidence (regarding Mr. Martinez and his identification of Mr. Zoellner as the assailant) in his original complaint filed back in May 2018. *See* Docket No. 1 (in ¶ 27 of the complaint, alleging that "Detective Eric Losey filed a false police report, . . . stating in that report that Jason Martinez had identified the [sic] Zoellner as the perpetrator[;] Losey, who interviewed Martinez, admitted to Deputy District Attorney Rees, that he was mistaken when he wrote in his report that Martinez had identified Zoellner"). In subsequent complaints, Mr. Zoellner wrapped in Det. Sgt. Losey into the alleged fabrication of evidence. *See, e.g.*, Docket No. 29 (in ¶ 39 of the first amended complaint, making the same allegation regarding Det. Losey and, in ¶ 66, alleging that Det. Sgt. Dokweiler approved the false police report); Docket No. 55 (in ¶¶ 83 and 110-11 of the second amended complaint, alleging that Det. Losey filed a false police report, claiming that Mr. Martinez identified Mr. Zoellner as the perpetrator, and that Sgt. Dokweiler recorded in a document (*i.e.*, the probable cause statement[3]) that "'[n]umerous witnesses had detained Zoellner and indicated he had stabbed the victim'"). Yet at no point did Mr. Zoellner move to amend when any of those complaints were filed. (The operative 5AC which contains the same allegations was filed back on January 27, 2021. *See* Docket No. 106 (5AC).) Even if something happened in the depositions that Mr. Zoellner took of the individual defendants in November 2021 that made him look at the case in a new light (he has not specified any new material fact), he still did not file the pending motion seeking relief until January 5, 2022, which was after the fact discovery cutoff of December 3, 2021. *See* Docket No. 146 (order).

Not only did Mr. Zoellner unduly delay in raising the § 1983 claim, but allowing him to bring the claim into the litigation now would also unfairly prejudice Defendants. As indicated above, fact discovery has already been completed, and the same is true for expert discovery. Furthermore, the time for filing dispositive motions has now passed as well. *See* Docket No. 146 (order) (reflecting expert discovery cutoff of January 14, 2022, and deadline of January 20, 2022, for the filing of dispositive motions). *See Artemus v. Louie*, No. 16-cv-00626-JSC, 2017 U.S.

---

[3] *See* Zareh Decl., Ex. 7 (probable cause statement, dated 4/16/2017).

1   Dist. LEXIS 27307, at *9 (N.D. Cal. Feb. 27, 2017) (noting that "case law indicates that a
2   defendant may establish prejudice by demonstrating that a motion to amend was made . . . when
3   discovery had closed or was about to close"). *See, e.g.*, *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d
4   1080, 1087 (9th Cir. 2002) (noting that proposed amendment would add new causes of action
5   which "would have required further discovery, which was to close five days after the motion to
6   amend was filed[;] [t]he requirement of additional discovery would have prejudiced [defendant]
7   and delayed the proceedings" and thus the lower court did not abuse its discretion when denying
8   [plaintiff's] motion to amend"). Although Defendants likely conducted some discovery related to
9   the alleged fabrication of evidence based on the allegations in the prior complaints, that does not
10  change the fact that, with a new claim, Defendants would have been entitled to additional
11  discovery. In any event, Defendants would be prejudiced because they could no longer challenge
12  the new claim through a summary judgment motion.
13       To the extent Mr. Zoellner seeks leave to add a new claim for fraud, the same basic
14  analysis above applies (*i.e.*, undue delay and prejudice). In addition, the fraud claim is futile. The
15  alleged false statements by the police officers were statements that Mr. Martinez had identified
16  Mr. Zoellner as the perpetrator. The problem for Mr. Zoellner is that there is no plausible basis for
17  him to allege that he relied on the false statements. *See Lazar v. Superior Court*, 12 Cal. 4th 631,
18  638 (1996) (stating that the elements of fraud are "(a) misrepresentation (false representation,
19  concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to
20  induce reliance; (d) justifiable reliance; and (e) resulting damage") (internal quotation marks
21  omitted). In his motion, Mr. Zoellner suggests that he relied on the false statements because,
22  during the incident at issue, he had "two significant head injuries" and a concussion and thus "has
23  no memory as to the events of that evening. Likewise, [he] relied on those false statements and
24  had to prepare a defense, incurring fees and costs and suffering emotional distress damage." Mot.
25  at 13; *see also* Prop. 6AC ¶¶ 319-20 (alleging that the officers "intended that Plaintiff would rely
26  on those statements since Plaintiff was unconscious during the time Lawson was stabbed" and that
27  "Plaintiff relied on those statements, and as a direct and proximate result[] of them, was forced to
28  incur attorney's fees and other costs, as well as suffer emotional distress to defend himself against

7

false allegations"). But this is not plausible because Mr. Zoellner was defending on the basis that he was *not* the assailant.

The Court therefore denies the motion for leave to amend, both as to the § 1983 claim for fabrication of evidence and as to the claim for fraud.

## II.　CONCLUSION

For the reasons stated above, the Court hereby denies both Mr. Zoellner's motion for leave to file a motion for reconsideration and his motion for leave to amend.

This order disposes of Docket No. 201.

**IT IS SO ORDERED**.

Dated: January 26, 2022

_____
EDWARD M. CHEN
United States District Judge