Elizabeth Zareh (SBN# 182871)
75 Broadway Street, Ste 202,
San Francisco, CA 94111
Telephone: (415) 830-3031
Facsimile: (415) 830-3031
Email: elizabeth@zarehassociates.com

Attorney for Plaintiff
Kyle Zoellner

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

KYLE C. ZOELLNER,

                    Plaintiff,

    V.

CITY OF ARCATA, et. El.

        Defendants.

Case No. 3:18-cv-04471-JSC

PLAINTIFF'S MEMORANDUM RE PROBABLE CAUSE & REQUEST FOR JUDICIAL NOTICE

Trial Date:     October 3, 2022
Time:           8:30 a.m.
Location:       450 Golden Gate Avenue
                San Francisco, California 94102
Courtroom:      8 (17th Floor)
Judge:          Hon. Jacqueline Scott Corley

## INTRODUCTION

A reasonable person cannot believe a stabbing occurred without a knife. A reasonable person cannot believe or conclude a fair probability that Plaintiff stabbed anyone when he had no knife. A mere hunch is insufficient to support the existence of probable cause.

Applying the test of the "totality of circumstances" there is NO connection between the murder weapon and Plaintiff. None. Yet Plaintiff was charged with a single count of first degree murder. This is charge requires special intent not an accidental killing. Section 187 requires specific intent and a significant factor in charging someone with murder in the first degree. As a result, there must be probable cause to support that specific intent element of the crime.

Three factors are extremely important: First, Plaintiff had no knife: his fingerprint was not on the knife and his clothing fiber was not on the knife and no one saw him with a knife and witness told officer she did not have a knife. Therefore, no reasonable person cannot believe or conclude a fair probability that Plaintiff stabbed anyone when the evidence show that he did not have a knife.

The second is the location of stabbing. If the court believes Paris Wright's story, then it must disregard the evidence collected at the scene. The evidence found at the scene and other witnesses including Jason Martinez contradict Paris Wright's story that Lawson and Plaintiff were entangled after the stabbing, Lawson was stabbed in the grassy area, that Lawson was bleeding in the grassy area and/or assumption that Plaintiff stabbed Lawson. Wright's story confirms one thing: he had bloody hands from touching Lawson while he was bleeding. No blood was found in the area of stabbing and there was no commotion between Lawson and anyone else after the stabbing.

The third is that the fibers found on the murder weapon hold the key as to who did. Plaintiff's clothing fibers are absent on that knife. But, other fibers are present. At a minimum there are three individuals who were at the scene and took part in the events unfolding that early morning hours, in attacking Plaintiff and/or were with Lawson near the time of the stabbing. One of them had injuries consistent with a knife. None of their clothing was collected. How could a murder investigator ignore the evidence found on the murder weapon. The murder weapon holds the key to this murder investigation. Yet was not investigated.

Jason Martinez's story has significant support in evidence found at the scene and reliability. First, he told the truth in court. He told the state court that Losey's account of his statement was false. Second, Martinez's story is supported by Losey's diagram of the scene. Martinez saw two males standing, no altercation, one stabbed the other. The person stabbed runs across and falls in the bushes. That is exactly what Losey's diagram shows.

As a result, no reasonable person could believe or conclude a fair probability that the evidence found on the murder weapon should be ignored and that Plaintiff stabbed Lawson without a knife in an area where there was no blood. If there was no blood and no knife, then there is no stabbing and no probable cause.

REQUEST FOR JUDICIAL NOTICE

Pursuant to Rule 201, this Court should take judicial notice of the transcript of the state court proceeding when the honorable judge Reinholtsen dismissed the murder charges against Plaintiff. A true and correct copy attached as Exhibit A to Zareh Declaration in support.

1   Judicial notice may be taken "of court filings and other matters of public record." Reyn's Pasta

2   Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); "[W]e 'may take notice of

3   proceedings in other courts, both within and without the federal judicial system, if those proceedings have

4   a direct relation to matters at issue.'" *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007).

5   In this case, one of the elements of malicious prosecution was successful termination of

6   proceedings in the prior case. Exhibit A is direct evidence of that issue and addresses the issue of probable

7   cause. As a result, this Court should take judicial notice of Exhibit A attached to Zareh Decl.

8

9   MEMORANDUM OF POINTS AND AUTHROTITES
    IN SUPPORT OF LACK OF PROBABLE CAUSE

10

11   I.   THE EVIDENCE

12   On April 15, 2017, Lawson was stabbed twice in his upper chest area and slightly lower. The stab

13   wounds were significant in size and one was 3.5".  Lawson lost significant amount of blood at the scene

14   and died as a result. Plaintiff was arrested for violating Penal Code section 187, murder in the first degree.

15   This is a special intent crime. Later, he was officially charged with the same violation.

16   The scene was a blood bath. Blood was everywhere except the grassy area located by the front of

17   the house. (see Defendants Exhibits bate numbers 1762, 1769 & 240) Losey testified that he searched the

18   grassy area and did not find any blood in the grassy area. Wright told the officers that he found Lawson

19   stabbed in the grassy area, on the ground holding on to Zoellner really tight and he believed Zoellner was

20   going to die due to Lawson's tightness of his grip. He separated the two and Zoellner rolled way, he saw

21   Lawson bleeding, Lawson's shirt was bloody, he touched Lawson while he was bleeding, he lifted

22   Lawson's shirt and saw two stab wounds on Lawson, he did not see a knife and he only saw keys between

23   the two. Wright made no attempt to help Lawson who was bleeding and started to beat up Zoellner until

24   the cops arrived. Officers found no blood at that location, found no blood dripping from the grassy area

25   to the cul-de-sac and no evidence that the keys were bloody.

26   A knife was recovered from the scene. It had no blood on the knife. (see Defendant's Exhibit 28

27   bate# 1754). The fingerprint on the knife did not match Plaintiff's. The fibers on the knife did not match

28   Plaintiff's clothing. No one saw Plaintiff with a knife. Ortega, McFarland, Wilkins and Gleaton, who saw

Plaintiff arrive at the scene and walked with him to the front of the house, told Nilsen and Losey that Plaintiff did not have a knife. Plaintiff said he did not have a knife.

The plaintiff was badly beaten by a group of individuals at the scene and was knocked out unconscious. While lying unconscious, he was attacked by Paris Wright with his bloody hands from touching Lawson. All of them were BU brothers of Lawson. Wright continued to beat Plaintiff until the cops arrived. However, it is unclear as to the amount of blood on Wright's hands when he lifted Lawson's shirt and touched Lawson while bleeding and if any of Lawson's blood was transferred to Plaintiff when Wright attacked Plaintiff. Also, unclear is where Plaintiff was hit by Wright and if he transferred any blood on Plaintiff from Lawson by touching him.

After being beaten by 2 groups, the plaintiff suffered significant injuries. Officer Nilsen wrote in his report, Plaintiff was bleeding from his eye, nose and mouth when he was arrested. Plaintiff's head hit the pavement and suffered brain swelling and concussion. The Castillo brothers, Lawson's friends told Dokweiler that Plaintiff was "knocked out" when they finished beating him. Ortega told Nilsen that Plaintiff was unconscious when she heard a person yell, "he has a knife."

There was no evidence to contradict that the blood from Plaintiff's clothing came from anyone else. There was no forensic and no other evidence to the contrary. Plaintiff suffered two attacks by two groups of people. These attacks were major blows and punches to his head and body. Paris Wright with his bloody hands attached Plaintiff and punched him all over his body. Dokweiler admitted that during the first fight when Plaintiff was attacked, he was in a fetal position.

As testified by Plaintiff and his father, Plaintiff sufferers from excessive nosebleed a condition that he has had for a long time. At trial, Plaintiff demonstrated as to how the blood got on to his pants and clothing. Plaintiff's father brough him an icepack and a cold drink to help with bleeding.

Officer Arminio said in her report that the stabbing occurred in the cul-de-sac (BS1) 3 feet away from where the knife was found (628-4). Officer Arminio's report was based on her observations and conversations with the witnesses' statements at the scene. Losey prepared a diagram of the scene and shows blood pools in area of BS1 & BS2. And drips of blood in the area of BS3 to 6. (See Below: Defendant's Exhibit 20 bate#240)

4



Losey's diagram supports Martinez's account of events. Martinez said that he saw no commotions or altercations. He saw two people facing each other aggressively. He heard a sound "he has a knife." He saw one male stab the other twice with right hand. Then he saw the stabbed person go across the street and fall into the bushes. Bs1 to Bs6 locations are consistent with Martinez's account.

Martinez did not see Plaintiff and never identified him as the stabber. He did not know who he was and could not even identify him in court.

There were significant evidence pointing to others as suspect. The murder weapon holds the key to solving any crime. Detectives sent the murder weapon for examination and the analysis showed at least 4 colors of fiber on the knife. The fiber report excluded Plaintiff's clothing from the fiber found on the knife. But it pointed to 4 colors: red, white, blue and green. At least 3 people associated with this altercation and incident wore these colors. The three, Bobadilla, Wright and one of Castillo brothers were intimately connected to attacking Plaintiff and being in close contact with Lawson around the time of stabbing. None of their clothes were examined to determine if there was a match. That cannot be an ignorance or an oversight. This information is the most critical information you can have in any murder investigation. Evidence on the knife.

At the scene, a witness approached officer Nilsen attempting to give information about a potential suspect that stabbed Lawson and pointing to a direction that the suspect fled. Instead, Nilsen told him that he has the suspect. Nilsen made no attempt to obtain any information from him. At the scene of a crime a witness approaches the police officer in charge to provide critical information and the officer chooses to ignore.

1

2

## II.    ARGUMENTS

3

    1.    **Defendant Failed To Rebut The Presumption Of Lack Of Probable Cause Established By Plaintiff.**

4

    The filing of a valid grand jury indictment establishes probable cause. See *Kalina v. Fletcher*, 522

5

U.S. 118, 129, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (citing *Gerstein v. Pugh*, 420 U.S. 103, 117 n. 19,

6

95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (noting that "th[is] Court has held that an indictment, fair upon its

7

face, and returned by a properly constituted grand jury, conclusively determines the existence of probable

8

cause…").

9

    The opposite is true as well. A dismissal by a court conclusively establishes lack of probable

10

cause. (*Id*.) As noted by the court during the oral arguments, Plaintiff has met his burden of showing prima

11

facia case of no probable case at trial. The trial testimony and the state court's finding of lack of probable

12

cause, at a minimum, gave rise to a presumption and a prima facia case of no probable cause which shifts

13

the burden on Losey to overcome that finding. *Williams v. Hartford Ins. Co*. (1983) 147 Cal.App.3d 893,

14

900 [195 Cal. Rptr. 448]

15

    On May 5, 2017, after hearing from 17 witnesses and all other evidence, judge Reinholtsen said:

16

17

"I have to weigh that evidence in terms of whether there's reasonable cause to believe that Mr. Zoellner, in fact, stabbed and killed Mr. Lawson…. The physical evidence, when you — when you take the physical evidence along with the — what I find to be confusing evidence as to what actually happened, you have a pool of blood in the driveway of the — of the — approaching the house. And you have both Detective Losey and Officer Arminio saying that the pool of blood is located there. Then there's drippings or droppings that are going to the location — or towards the location which Mr. Lawson was ultimately found, and that there's another pool of blood there. There's no evidence — no testimony, at least, concerning any blood located in the grass area where most people say these fights were taking place.

18

19

20

21

22

The parties have stipulated that the analysis of the evidence conducted thus far — there's a fingerprint found on the knife and that the fingerprint is excluded as being the defendant's fingerprint. There are fibers found on the knife, and, at least at this stage of the proceedings, those fibers have been determined to be dissimilar from clothing that was worn by the defendant that evening.

23

24

25

There's no testimony or no evidence to suggest that the knife that was found was a knife that was owned by the defendant. In fact, the testimony is contrary, that the type of knives that the defendant had that he used for his employment — his employer came in and testified that the knife that was observed — or photographed as an exhibit in this case was not a knife he'd seen before, not a knife that's been used by the defendant at his place of employment, nor was it one that he would expect to be used in a — in a catering or restaurant business…

26

27

28

Other than cause of death, there's no testimony from an autopsy surgeon, testimony that you might expect in a case such as this such as to the — the exact location and nature of the wounds, the size of the wounds, the type of instrument that may have inflicted the wounds, whether the knife located at the scene of the incident is of the size and shape that would've inflicted those sorts of wounds. We don't have any blood analysis as to blood on the — particularly on the defendant, whose blood it was if it wasn't his…

the physical evidence doesn't have anyone — of all the people there, no one sees a knife. No one sees the defendant with a knife. No one sees any kind of confrontation between the defendant and the — Mr. Lawson that would suggest any kind of instrument was being used…

And again, the physical evidence, the location of the pools of blood, the knife — there's no proof that this was, in fact, even the knife that was used. There's no proof as to ownership of the knife. The knife has fibers and fingerprints not associated with the defendant. There's — I guess there's all kinds of speculation we can enter into, but how the knife, assuming it was used by somebody in the confrontation, would've gotten to the — underneath the car in such a short period of time, particularly with Mr. Paris' (sic) testimony, if it's accepted, that Mr. Lawson had the defendant in a — in a headlock and a body lock with his arms.

You know, obviously — I don't mean this in any way facetiously. Obviously, we know Mr. Lawson was killed. We know he was killed by a knife. And we know somebody at that party did it. But at this point, I don't believe that the evidence is sufficient to establish reasonable cause to believe that the defendant is the person who did it at this point…that requirement is that: Such a state of the evidence that would lead a person of ordinary caution or prudence to believe or conscientiously entertain a strong suspicion of the guilt of the accused. And at this point, I don't find the evidence is sufficient to make that finding.  But to the credit of the people who testified… and everybody that's testified that he [Zoellner] was basically — that the defendant was not argumentative, not trying to create a situation."

None of the evidence Defendant presented at this trial rebut this findings. Defendants offered NO evidence to rebut that presumption. As admitted, Defendant had no additional information that was not previously presented to the state court. Therefore, this Court should find for Plaintiff on element # 3 of the jury instruction that no reasonable person in Mr. Losey's circumstances would have believed that there were grounds for causing Mr. Zoellner to be prosecuted.

### 2.    Plaintiff Was Charged With First Degree Murder, A Specific Intent Crime, And There Was No Probable Cause As To The Specific Intent

Although "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction," *Adams v. Williams*, 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), officers must have some reliable information that a person has committed a crime, usually including violating its key elements. See, e.g., *Ortega–Melendres v. Arpaio*, 836 F. Supp. 2d 959 (2011) (citing to, *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir.1994) (finding

7

that while "an officer need not have probable cause for every element of the offense ... when specific intent is a required element, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred.") For example in the immigration context, "an alien's 'admission of illegal presence ... does not, without more, provide probable cause of the criminal violation of illegal entry.' " *Martinez–Medina*, 673 F.3d at 1036, 2011 WL 855791, at *6.

The plaintiff was arrested and charged with one count of violation of Penal Code section 187, murder in the first degree. The criminal complaint had no other count. Violation of penal code section 187, is a special intent offense and requires finding of probable cause supporting "special intent."  There was NO evidence to show that Plaintiff intentionally stabbed Lawson. None. Nothing in the record shows "intent." As a result, there was no probable cause. To the contrary, Castillo brothers said that Plaintiff was polite and nice at the first encounter.

As demonstrated below, there is no evidence that Plaintiff had a knife to commit the stabbing. That is a critical factor in finding probable cause for a murder charge. This is an absolute defense. If Plaintiff was unarmed, he could not have done it. Looking at the totality of circumstances a reasonable person cannot believe a stabbing occurred without a knife. A reasonable person cannot believe or conclude a fair probability that Plaintiff stabbed anyone when he had no knife. A mere hunch is insufficient to support the existence of probable cause. *People v. Tang*, D067905 (Cal. Ct. App. May 12, 2016). As a result, Plaintiff met his burden.

3.     **The Totality Of Circumstances Show Plaintiff Had No Knife, Therefore No Probable Cause.**

Police must only show that, "'under the totality of the circumstances,'" "'a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime.'" *United States v. Valencia Amezcua,* 278 F.3d 901, 906 (9th Cir. 2002) (quoting United States v. Garza, 980 F.2d 546, 550 (9th Cir. 1992)). Although "conclusive evidence of guilt is not necessary to establish probable cause, mere suspicion, common rumor, or even strong reason to suspect are not enough." *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 953 (9th Cir. 2010).

The forensic excluded Plaintiff as a suspect.  The fingerprint on the knife did not match Plaintiff's. The fiber on the knife did not match Plaintiff's clothing. No one saw Plaintiff with a knife. As testified by Dokweiler the knife found at the scene was not Kyle's. Ortega told officer Nilsen,

Plaintiff did not have a knife.  Plaintiff told Nilsen he did not have a knife. McFarland, Gleaton and Wilkins told Losey and Dokweiler that he did not have a knife. Ortega, Wilkins, Gleaton and McFarland were the only 4 who saw the plaintiff when he arrived to pick them up. They saw no knife. The plaintiff had only his keys and his phone.

The chef's bag had no missing knife. Dokweiler admitted that there was no missing knife from the bag.  Clark & Chandler claimed that they saw a "thing" (not knife) in Plaintiff's hand when Wright was fighting with Plaintiff. However, Wright said he did not see a knife but saw keys. Defendant offered no evidence that the keys were bloody.   No evidence whatsoever. The commonsense and logical conclusion is that Plaintiff had NO knife. *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 953 (9th Cir. 2010)

> As noted by judge Reinholtsen:
>
> "[t]here is no testimony or no evidence to suggest that the knife that was found was a knife that was owned by defendant [Zoellner]. In fact, the testimony is contrary, that the type of knives that the defendant [Zoellner] had that he used for his employment… not a knife that's been used by the defendant [Zoellner] at his place of employment…. No one sees the defendant with a knife. …No one sees any kind of confrontation between the defendant [Zoellner] and the – Mr. Lawson that would suggest any kind of instrument was being used… the knife has fibers and fingerprints not associated with the defendant [Zoellner]."  See Exhibit A attached to Declaration of Elizabeth Zareh in support, P.934:10 - 935:25)

As a result, Plaintiff had no knife and could not have stabbed Lawson with a knife when he had no knife or any evidence to suggest that he had a knife. There is no fair probability that a reasonable person can conclude Plaintiff stabbed anyone, let alone, Lawson when he had no knife.

### 4.   The Totality Of Circumstances Show The Stabbing Occurred In The Cul-De-Sac, And Plaintiff Was Not At The Location Of Stabbing And Had No Knife

Probable cause exists when "`the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'" *Bailey v. Newland*, 263 F.3d 1022, 1031 (9th Cir. 2001) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). *U.S. v. 22249 Dolorosa Street*, 167 F.3d 509 (9th Cir. 1999)

Officer Arminio was the second officer at the scene. In her written police report, she identified the location of the stabbing in the middle of cul-de-sac, where the large pool of blood was, 3 feet away

from the knife found at the scene. Other than this pool of blood, there were another pool of blood and that is the location where Lawson was ultimately found.

Officer Arminio's report is reliable and based on an officer's observations. At the oral arguments this Court, somehow questioned officer Arminio's police report's reliability. There is no evidence before this Court to raise any doubt that Officer Arminio's report was unreliable. Officer Arminio was the second officer at the scene, saw Lawson at the scene, provided lifesaving efforts to Lawson, talked to witnesses and made her report. Her account is consistent with Losey's diagram. This is nothing but having reasonable trustworthy information when writing her official police report.

In fact Arminio's police report is corroborated by Losey. Losey testified he searched the grassy area and did not find any blood in the area. Losey also testified that he attended the autopsy and Lawson's wound was significant in size, 3.5" and had significant bleeding. He died of bleeding from his wounds. There is no basis for this Court to reject officer Arminio's report.

The only witness that places Lawson next to the plaintiff in the grassy area and therefore contradicts Officer Arminio's report is Paris Wright. However, that statement has no reliability when Plaintiff had no knife and the evidence collected by officers Losey and Arminio at the time contradicts Wright's statement. There were no blood stains in the grassy area. Lawson could not have been stabbed in the grassy area.

In fact Wright's statements are contradictory. Wright said he saw found Lawson and Plaintiff in the grassy area, Lawson was bleeding in the grassy area, saw Lawson's stab wounds, touched Lawson's bloody shirt and body. The fact is that these statements contradict each other and cannot be accepted as trustworthy or true. If Wright saw Lawson bleeding, then blood stains must be present in the grassy area. That is not the case. As a result, Wright's statements about Plaintiff being with Lawson in the grassy area immediately after the stabbing are untrue was unreliable and trustworthy.

As noted by Judge Reinholtsen, the physical evidence, the location of the pool of blood in the cul-de-sac, no blood in the grassy area described by Wright, Plaintiff having no knife or any connection to the knife found, no one saw the knife, and that Ren Bobadilla having a puncture and a wound that cannot be explained, would lead NOT "lead a person of ordinary caution or prudence to believe or conscientiously

entertain a strong suspicion of the guilt of the accused. And at this point, I don't find the evidence is sufficient to make that finding." (Exhibit A to Zareh Decl., P. 937:9-14)

**5.   The Totality Of Circumstances Show The Blood On Plaintiff's Clothing Were His Own Blood And Had No Knife**

As noted above, "mere suspicion, common rumor, or even strong reason to suspect are not enough" to find probable cause. *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 953 (9th Cir. 2010).

There was no dispute that Plaintiff was attacked by at least 3 guys and later by Paris Wright. Plaintiff was badly beaten. Paris Wright admitted to touching Lawson when he was bleeding. Imagine in the dark night to be able to see 2 stab wounds and bleeding, he must have significantly touched Lawson. A 3,5" wound results in significant and excessive bleeding. However, the extent of blood on Wright's hands is unknown.

As a result of his injuries, Plaintiff was bleeding from his eye, mouth and nose. Officer Nilsen documented that in his police report. Moreover, there was no forensic evidence that the blood on Plaintiff's pants and clothing came from someone other than himself. In fcat, Nilsen asked plaintiff at the scene about blood on his pants and Plaintiff told him, in that state of mind, without knowing anyone was stabbed that it came from his nose. It was both recorded on the tape and was written as a police report by Nilsen. This Court heard from Plaintiff and his father about his long history of excessive nosebleeds.

But the mere existence of blood stains on Plaintiff's clothing without more is insufficient to find probable cause for murder in the first degree when Plaintiff had no knife. *Id*.; *Martinez–Medina*, 673 F.3d at 1036, 2011 WL 855791, at *6. ("an alien's 'admission of illegal presence ... does not, without more, provide probable cause of the criminal violation of illegal entry.') Even a strong suspicion is not enough to find probable case. *Edgerly* at 953. The totality of circumstances must support the existence of probable cause when Plaintiff had no knife and was not in the location where Lawson was stabbed, no reasonable person can conclude a fair possibility.

In fact Judge Reinholtsen addressed that issue when he found no probable cause. He said:

"Other than cause of death, there's no testimony from an autopsy surgeon, testimony that you might expect in a case such as this such as to the — the exact location and nature of the wounds, the size of the wounds, the type of instrument that may have inflicted the wounds, whether the knife located at the scene of the incident is of the size and shape that would've inflicted those sorts

of wounds. We don't have any blood analysis as to blood on the — particularly on the defendant, whose blood it was if it wasn't his." (Zareh Del. P. 934:27 – 935:8; Dkt#274-25)

6. **Jason Martinez's Story, An Eyewitness To The Stabbing, Is Supported By The Evidence**

Both Jason Martinez and Paris Wright are BU brothers and friends of Lawson. But their stories vary significantly. However, Jason Martinez's story is supported by Losey's diagram and Arminio's report. Martinez saw two male subjects standing. One stabbed the other and the person stabbed runs across and falls into bushes. That is the story you see in the diagram prepared by Losey and consistent with Arminio. In the diagram BS1 is the first location of pool of blood which is 3 feet away from the knife found at the scene. Bs3 to Bs6 are the drops of blood to where ultimately Lawson was found at Bs2.

Martinez does not see Plaintiff and has no idea who he is. Martinez does not see Paris Wright, his BU brother, after the stabbing. Martinez does not see Lawson getting tangled up with anyone after he was stabbed. It makes common sense to run away from the person and the location of stabbing rather than fighting when losing blood and injured. The goal would be to get away from the person who stabbed you not holding on to him. Martinez saw the person stabbed, whom he later found out was Lawson, run across and fall into bushes. That is the story you see from Losey's diagram and officer Arminio.

Also, significant is that Martinez testified in court and told the truth. He testified truthfully that he never told Losey that he saw Plaintiff. This goes to his credibility. His statement is completely consistent with evidence found at the scene. Therefore, reliable, and trustworthy.

7. **Paris Wright' Statement Regarding Location And Entanglement Is Contradicted By Evidence And Martinez, therefore Not Reasonably Trustworthy.**

Probable cause exists when "'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'" *Bailey v. Newland*, 263 F.3d 1022, 1031 (9th Cir. 2001) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). *U.S. v. 22249 Dolorosa Street*, 167 F.3d 509 (9th Cir. 1999)  "A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued." *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) "[P]olice officers ha[ve] a duty to conduct an investigation into the basis of a witness' report." *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991). See also *Bell v. Neukirch*, 979 F.3d 594, 608 (8th Cir. 2020) ("Officers also have a duty to conduct

12

1  a reasonably thorough investigation before arresting a suspect.") above all, "Certainly, an officer may not

2  ignore exculpatory evidence that would negate a finding of probable cause." *Yousefian v. City of Glendale*,

3  779 F.3d 1010, 1014 (9th Cir. 2015)

4  Paris Wright's story is unsupported by the evidence. Paris Wright's implied statement about the

5  location of the stabbing is unsupported by evidence. He alleges the stabbing occurred in the grassy area.

6  The scene is a bloodbath. There is blood everywhere except the location where Wrights points to. The

7  officers at the scene knew the location Paris Wright alleges the stabbing and entanglement occurred. They

8  searched the area and found no blood. If there is no blood there his statement lack trustworthiness.

9  At the oral argument this Court expressed a concern that the court does not know if the location

10  of stabbing should contain blood or not. Paris Wright's statement answers the court's question. Wright

11  said Lawson was bleeding in the grassy area when he found Lawson and Plaintiff. Wright said that when

12  he found Lawson he saw "mud" on his shirt and when he lifted his shirt, he saw Lawson was bleeding and

13  he saw the 2 stab wounds and described the wounds. Wright touched Lawson's blood. If Wright's story

14  is accepted as true, there should be blood in the grassy area.  But it is not.

15  As noted by the 9th Circuit, a determination as to whether probable cause exists requires a

16  "practical, common-sense" decision based on the totality of the circumstances known to the arresting

17  officer. See *Illinois v. Gates*, 462 U.S. 213, 214 (1983); *Dubner v. City & Cty. of San Francisco*, 266 F.3d

18  959, 966 (9th Cir. 2001).

19  Applying the principles of practical commons sense to the totality of the circumstances shows

20  that Wright's statements were unreliable, and Lawson could not have been stabbed in the grassy area when

21  the scene was a bloodbath except the grassy area. Mr. Lawson's stab wounds were 3.5" deep. Not a

22  papercut. With a pool of blood in the middle of the cu-de-sac 3 feet away from where the knife was found;

23  drips of blood going directly across the street to where Lawson was ultimately found; another large pool

24  of blood in the area where Lawson was ultimately found, it is difficult to assume that at the location of

25  stabbing Mr. Lawson did not lose any blood and was clean as a whistle. At a minimum, there should have

26  been some blood found. The officers found none.

27  Also, significant is that there are NO blood dripping from the grassy area to the first pool of blood.

28  That absence of blood shows that Mr. Lawson was not stabbed in the grassy area. Therefore, Wright's

statement relating to finding Lawson entangled with Plaintiff in the grassy area is unsupported by evidence and not reasonably trustworthy or reliable.

If Wright' story accepted where he states Lawson had Plaintiff in a headlock and body lock when he was bleeding. That means Plaintiff's back was to Lawson's front. The back of Plaintiff's white t-shirt had no blood on it. Lawson dies at the scene from loss of excessive blood from his stab wounds. That makes Wright's story unreliable and very questionable. How could Lawson be bleeding from the every stab wounds that resulted in his death, yet the back of Plaintiff's t-shirt is clean.

From what we know is that Wright's hands were bloody after touching Lawson. We also know that Wright beat up Plaintiff after Lawson was stabbed. That explains some of blood on Plaintiff's clothing.

As noted by judge Reinholtsen: even if we assume Paris' wright's story if true, which is extremely difficult to do, also assuming someone used the knife, (we know Plaintiff had no knife) with Lawson holding Plaintiff in such a tight close contact in a headlock and body lock with his arms, it would be impossible for the knife to be found underneath the car in such a short period of time.

This court cannot ignore the exculpatory evidence negating the existence of probable cause.

### 8.      The Investigation Excluded Exculpatory Evidence

"A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued." *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) "[P]olice officers ha[ve] a duty to conduct an investigation into the basis of a witness' report." *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991). See also *Bell v. Neukirch*, 979 F.3d 594, 608 (8th Cir. 2020) ("Officers also have a duty to conduct a reasonably thorough investigation before arresting a suspect.") above all, "Certainly, an officer may not ignore exculpatory evidence that would negate a finding of probable cause." *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015)

Fibers found on the knife still hold the key to this murder investigations yet they were ignored. The evidence shows this investigation was nowhere near close to being a trustworthy investigation. The forensic evidence from the fiber report showed at least 3 potential suspects that were not explored. Ren Bobadilla, one of Castillo brothers and Paris Wright, were closely associated with the events of that evening. In fact, Ren had a puncture wound on her right arm. They were involved in the altercations, and

some were directly involved in beating Plaintiff with Lawson. Their connection to the stabbing was not remote. Paris Wright alleges that he found Lawson stabbed. One was wearing a red shirt; another blue and white shirts and Bobadilla was wearing green plaid dress. The color of the fibers found on the knife matched their clothing. This was a significant factor specially when Bobadilla suffered a puncture wound. This placed these individuals in direct contact with the knife.

Looking at the fiber colors, Lawson's friend's clothing colors, unexplained puncture wound by Bobadilla, couple with Plaintiff having no knife, would make a reasonable person suspicious of other suspects involvement. Any reasonable officer would have investigated this exculpatory evidence and it was not investigated. Losey made no attempt to make any determination about the fiber on the Knife. If Plaintiff's clothing fiber was found on the knife, Defendant would be pointing to that as a VERY STRONG basis for probable cause. Yet, they made no effort to locate any clothing to match the fiber on the knife is beyond reckless and oppressive. It is nothing but focusing and framing Plaintiff.

Also, another significant factor was that Defendant made no attempt to obtain any information from a witness with first hand knowledge. At the scene of the crime, a person who approached them with critical information about the person who stabbed the victim and running away a certain direction. And the officer did NOTHING. He said I have the suspect in my car.

As Nilsen testified when he arrived people were fleeing the scene. He made no effort to stop anyone. When he arrived, there were "active fights" on going. He made no attempt to detain any person from the fight, which probably was a continuation of what got Lawson stabbed.

As a result, their argument that there was only one suspect cannot be a factor in determination of existence of probable cause. If it is a factor it should favor Plaintiff due to it being incompetent and ignored highly competent evidence to be followed up.

CONCLUSION

Based on the totality of circumstance, Plaintiff had no knife, there is no blood in the grassy area where Plaintiff was knocked out, the pool of blood is in the cul-de-sac where Plaintiff had no contact and the eyewitness to the stabbing did not see Plaintiff stab Lawson. The most significant evidence on the murder weapon excludes Plaintiff and points to at least three other individuals. One of them was injured by that knife. Therefore, no reasonable person can fairly conclude that Plaintiff stabbed Lawson.

1

Dated: October 14, 2022                    Respectfully Submitted,

2

3                                                        */s/ Elizabeth Zareh*
                                          By: _____ _____
4                                              Elizabeth Zareh
                                               Attorneys for Plaintiff, Kyle Zoellner

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICTAE OF SERVICE**

I, Elizabeth Zareh, certify that I am over the age of 18 years and not a party to the within action. My business address is 75 Broadway Street, Ste 202, San Francisco, CA 94111.

On October 14, 2022, I served a copy(ies) of the following document(s):

PLAINTIFF'S MEMORANDUM RE PROBABLE CAUSE & REQUEST FOR JUDICIAL NOTICE

on the parties to this action by placing them in a sealed envelop(s) addressed as follows:

Castillo, Moriarty, Tran & Robinson
Patrick Moriarty, Esq.
John Robinson, Esq.
75 Southgate Ave
Daily City, CA 94015
Patrick Moriarty pmoriarty@cmtrlaw.com
John Robinson  jrobinson@cmtrlaw.com

☐      (By EMAIL) I caused to be transmitted by Internet from email address elizabeth@zarehassociates.com the document(s) to: Patrick Moriarty <PMoriarty@aghwlaw.com>

The transmission was complete and the system did not report an error message.

■ (BY CM/ECF NOTICE OF ELECTRONIC FILING: I electronically filed the documents with the Clerk of the clerk by using CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on October 14, 2022 at San Francisco, California.

*/s/ Elizabeth Zareh*

_____

Elizabeth A. Zareh

CASE NO.: 3:18-CV-04471-EMC