1
2
3
4

Elizabeth Zareh (SBN# 182871)
75 Broadway Street, Ste 202,
San Francisco, CA 94111
Telephone: (415) 830-3031
Facsimile: (415) 830-3031
Email: elizabeth@zarehassociates.com

5
6

Attorney for Plaintiff
Kyle Zoellner

7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

8
9
10
11
12
13
14
15
16

| | |
|---|---|
| KYLE C. ZOELLNER,<br><br>                               Plaintiff,<br>   V.<br><br>CITY OF ARCATA, et. El.<br><br>            Defendants. | Case No. 3:18-cv-04471-JSC<br><br>PLAINTIFF'S NOTICE OF MOTION AND MOTION UNDER RULE 37 AND 11 FOR ISSUE & MONETARY SANCTIONS<br><br>Date:<br>Time:<br>Trial Date:    October 3, 2022<br>Location:       450 Golden Gate Avenue<br>                      San Francisco, California 94102<br>Courtroom:    8 (17th Floor)<br>Judge:          Hon. Jacqueline Scott Corley |

17

        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

18
19
20
21

NOTICE IS HEREBY GIVEN that on _____ in the above-entitled Court, located 450 Golden Gate Avenue, Courtroom 8, 19th Floor, San Francisco, California, Plaintiff KYLE CHRISTOPHER ZOELLNER (Zoellner) will, and hereby does, move the Court for an order granting Plaintiff's motion Under Rule 37 And 11 For Issue & Monetary Sanctions

22
23
24
25
26
27

        This motion is made on the grounds that Defendant and related others have demonstrated serious pattern of discovery misconduct by concealing highly relevant records central to Plaintiff's case. Defendants concealed, 1. the fiber report by DOJ, 2. email from Maggie Fleming to Chief of police in 2020 relating to her basis for filing criminal charges, 3. email exchanges between Chief Chapman and Maggie Fleming in April of 2017, 4. Twenty one pages of police reports, and 5.  834 ages of other related records. Plaintiff believes there are significantly more records that yet to be produced.

28

These records were central to Plaintiff's case. These concealed records resulted in dismissal of various defendants, prevented Plaintiff to fully develop his case and blocked Plaintiff from presenting evidence to response to Defendants claims at summary judgment.

This motion is based on this notice, the Memorandum of Points and Authorities attached hereto, all papers previously filed in this matter, and on such other and further evidence which may be presented at the time of any hearing.

STATEMENT OF RELIEF SOUGHT

1. Against Losey: Finding on the issue of probable case for Plaintiff that there was no probable cause.

2. Against all Defendants: Entry of default on count 9 against all defendants.

3. Against Maggie Fleming: Payment of $2,313.86 and no travel expense to be paid by Plaintiff.

4. Against Defense counsels: Payment of $ $40,125,000 in attorney's fees.


Dated: October 17, 2022                  ZAREH & ASSOCIATES

                                         /s/ Elizabeth Zareh

                                         By: _____

                                               Elizabeth Zareh, Esq.

                                                  Attorney for Plaintiff Kyle C. Zoellner

MEMORANDUM OF POINTS & AUTHORITES

**Table of Content**

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 1

ARGUMENTS ................................................................................................................... 6

    **1.    Defendant's Pattern Of Discovery Misconduct, Control And Concealing Significant And Highly Relevant Records Central to Plaintiff's case, Allowed Them To Shape A False Defense And Fraud Upon The Court** ................................................................................................................ 6

    **2.    Defendants' Pattern Of Misconduct Was General Miscarriage Of Justice.** ................................... 9

    **3.    All The Defendants Are Before This Court As To Claim #9 And Sanctions Are Appropriate Against All Parties, Non-Parties and Their Attorneys.** ................................................................ 12

        **A.    Sanctioning a former party** ............................................................................ 12

        **B.    Sanctioning non-parties** .................................................................................. 13

        **C.    Sanctions Against Counsel** ............................................................................. 14

**CONCLUSION** ................................................................................................................ 15

TABLE OF AUTHORITIES

**Cases**

*Chambers v. NASCO, Inc.*, 501 U.S.32 (1991) ...................................................................... 13

*Englebrick v. Worthington Industries, Inc.*, 620 F. App'x 564, 567 (9th Cir. July 6, 2015) ...... 14

*Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996) ................................................ 7

*Forro Precision, Inc. v. IBM*, 673 F.2d 1045, 1053 (9th Cir.1982) ......................................... 12

*Gammino v. American Telephone and Telegraph Company*, No. 12-666, 2013 WL 6154569, at *2 (D. Del. Nov. 22, 2013) ....................................................................................................... 12

*G-K Properties v. Redevelopment Agency,* 577 F.2d 645, 647 (9th Cir.1978) ........................ 12

*Hausman v. Holland Am. Line-U.S.A.*, 2016 WL 51273, at *10 (W.D. Wash. Jan. 5, 2016) ..... 9

*In re: EpiPen Direct Purchaser Litigation*, No. 20-cv-00827, 2021 WL 4892231, at *6 (D. Minn. Oct. 20, 2021) .......................................................................................................................... 13

*Jane Doe No. 1 et al v. Daniel S. Fitzgerald*, No. 20-10713, 2022 WL 4596557, at *4 (C.D. Cal. Sept. 21, 2022) .......................................................................................................................... 7

*L.A. Terminals, Inc. v. United National Insurance Company*, 340 F.R.D. 390 (C.D. Cal. 2022) ............. 6

*McDonald Apiary, LLC v. Starrh Bees, Inc.*, No. 14-CV-351, 2016 WL 4919885, at *5 (D. Neb. Sept. 14, 2016) ....................................................................................................................... 12

*Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 741 (9th Cir. 2021) ..................................... 7

*Meta Platforms, Inc. v. BrandTotal Ltd.*, --- F.Supp.3d ---, No. 20-cv-07182, 2022 WL 1990225, at *4 (N.D. Cal. June 6, 2022) .......................................................................................................... 7

*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) ........................................................................................................................... 12

*National Hockey League*, supra, 427 U.S. at 643, 96 S.Ct. at 2781 ......................................... 12

*Pennwalt*, 708 F.2d at 494 ........................................................................................................... 13

*Southeastern Pennsylvania Transportation Authority v. Orrstown Financial Services, Inc.*, 12 F.4th 337, 352 (3rd Cir. 2021) ............................................................................................................. 12

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) .............. 7

**Statutes**

28 U.S.C. § 1927 ........................................................................................................................... 14

**Rules**

Fed. R. Civ P 37(c)(1) .................................................................................................................. 6

Fed. R. Civ. P. 37(c)(1) ................................................................................................................ 6

Fed. R. Civ. P. 45(g) .................................................................................................................... 13

Fed. R. Civ. P. 54(b) .................................................................................................................... 12

Rule 26(a) ...................................................................................................................................... 6

Rule 37(b)(2)(A)(i)-(vi) ................................................................................................................ 7

Rule 37(c) ...................................................................................................................................... 7

Rule 37(c)(1) .................................................................................................................................. 7

Rule 37(c) ...................................................................................................................................... 6

Rule 37(g) .................................................................................................................................... 14

Rule 45(f) ...................................................................................................................................... 13

INTRODUCTION

With their lies, concealment of essential records from Plaintiff and sharp tactics, Defendants police officers, detectives, police chiefs and city officials litigated this Case. There is no justification for their misconduct, and it should be sanctioned. Defendants sandbagged the Plaintiff.

A close look at the history of discovery, in this case, speaks volume as to their deliberate concealment and intentional efforts to prevent the production of records from third parties when they knew the third party has records that are harmful to their case. There has been no shame in lying at depositions and hiding records. This newly discovered evidence, the email from chief Chapman to Maggie Fleming about eyewitness reports before criminal charges were filed, should have been disclosed at the time of Rule 26 disclosure. It would have allowed Plaintiff to adjust his claims and Plaintiff would have had other opportunities to litigate this case and defendants would have remained in the case.

As testified by Fleming, this was not the only email. There were constant communications with the DA's office regarding the investigation. This Court ordered them to produce the email and 21 pages of police reports. During the course of discovery Defendants withheld a significant number of records claiming them to be privileged or irrelevant. It was Plaintiff's right to depose defendants on that significant and smoking gun email and other communications between the DA and APD. Two days into this trial, Plaintiff learned for the first time about the existence of an email contradicting the very claim Defendants made in support of their motion for summary judgment which resulted in dismissal of some of the defendants from the malicious prosecution claim. This intentional concealment should not be rewarded. Their pattern of concealment cannot be anything but a deliberate act.

FACTUAL BACKGROUND

In this case, on September 25, 2020, the parties exchanged records pursuant to Rule 26 disclosures. Missing from that disclosures were highly relevant and records critical to Plaintiff's case. Defendants concealed, 1. the fiber report by DOJ, 2. email from Maggie Fleming to Chief of police in 2020 relating to her basis for filing criminal charges, 3. email exchanges between Chief Chapman and Maggie Fleming in April of 2017,  4. Twenty one pages of police reports and 834 ages of other related records. Plaintiff believes there are significantly more records to be produced central to Plaintiff's case.

1   Some of these documents were produced after issuance of order on summary judgment, one was produced

2   at trial and the fiber report was NEVER produced.  (See¶ 4, Zareh Decl.)

3         On January 8, 2021, Plaintiff served its request for production of documents and in Request Nos,

4   7, 8, 23,25, 26, 28, & 29 sought records and communications with the DA's office, investigation of the

5   Lawson case, information and communications. (See ¶5, Exh. A to Zareh Decl.) Specifically, Request #

6   28 sought: "Produce any and all documents provided to the Humboldt County District attorney relating to

7   David Josiah Lawson." Defendants served their response and produced some records namely bate Nos. 1-

8   2511, 3419-3420, 3434-3472, 4457-4467. (see ¶6, Exh. B to Zareh Decl.) At no time, they produced email

9   exchanged between the DA and APD except after close of discovery and grant of motion for summary

10  judgment one single email was produced which related to a news reporter. This was deliberate and flagrant

11  disregard of discovery Rules.

12        Plaintiff started the meet and confer process for additional records. (See¶7, Exh. C to Zareh Decl.)

13  Finally, Judge Ryu was assigned to hear discovery disputes. She was notified as to the status, and she

14  ordered the parties to meet and confer further and meet and confer in person. (See ¶7, Exh. D to Zareh

15  Decl.) The parties engaged in that process again, emails were exchanges and met on Zoom due to Covid.

16  Later, Defendants produced a 4 column chart without identifying any documents which they falsely

17  claimed to be privileged & irrelevant.

18        On March 3, 2022, the court partially granted the defendant's motion for summary judgment

19  (Dkt#233) based on Defendants' declarations stating that they denied informing the DA about an

20  eyewitness account and stating lack of knowledge as to why the charges were filed. As a result, all

21  defendants including Dokweiler and Chief Chapman were dismissed. Defendants at their depositions

22  claimed that they did not provide any report to the DA's office as to an eyewitness account until after the

23  charges were filed and the date on the reports were the date that they completed and sent their reports to

24  the DA's office. In its order on MSJ, the court relied on Defendants' representations.

25        The court in its ruling on motion for summary judgment wrote: "although Mr. Zoellner claims

26  that Det. Sgt. Dokweiler conspired with Det. Losey to fabricate evidence, no reasonable jury could find

27  that a conspiracy existed." This email and their denial of having any knowledge about an eyewitness

28  account at their deposition shows conspiracy and liability as to Dokweiler and Chapman.

In its order the court wrote:

As an initial matter, the Court notes that, in his opposition, Mr. Zoellner has tried to expand the predicate acts to include the following: (3) a statement by Det. Sgt. Dokweiler in the 4/21/2017 charging summary that "'During the entirety of the altercations, Jason Martinez is the only witness that states he sees Zoellner with a knife and stabbing Lawson'" and (4) a statement by Det. Losey in his 4/27/2017 report that "'Martinez stated that, when he looked, he saw Zoellner stab Lawson. He stated that Zoellner held the knife in his right hand but he was unable to describe the knife. Martinez stated that he believed Zoellner struck Lawson with the knife once in the lower chest and once slightly higher.'" Opp'n at 27. The Court rejects Mr. Zoellner's attempt to expand the predicate acts. **Mr. Zoellner's delay in raising these statements as part of his defamation claim has prejudiced Defendants; they have not been able to move for summary judgment on these belated claims**." (Page 33:6-17)

If Plaintiff had these emails, he would have raised them in a timely manner. Plaintiff was significantly prejudiced. As demonstrated above, the Court was extremely concerned about any prejudice to defendants and prevented Plaintiff from alleging showing exactly what the newly discovered evidence showed, in Plaintiff's defamation claim. Concealing these records resulted in significant prejudice against Plaintiff.

Upon discovery of the email from Fleming to a news reporter, Plaintiff without the benefit of the email exchange between Chapman and Fleming referencing Martinez, sent a letter to the honorable judge Chen requesting reconsideration. Judge Chen denied that request and wrote: (Dkt # 243)

"The Court also notes that nothing about the email supports there being a conspiracy between Det. Losey, Det. Dokweiler, and/or Chief Chapman. Nor does the email help Mr. Zoellner with respect to his defamation claim." (Page 2:7-9)

The newly produced email exchange between Fleming and Chapman contradicts judge Chen's findings and demonstrates significant prejudice to Plaintiff. Plaintiff's counsel continued to follow up on discovery issues and after partial grant of summary judgment, finally, on April 13, 2022, Defendants released yet another group of records consisting of 860 pages. Hidden in it was an email between Maggie Fleming and the chief of police relating to her comment to a news reporter about her decision to file charges due to a false police report identifying plaintiff.  (See ¶ 8, Zareh Decl.)

Upon discovery of such a record, Plaintiff sought to re-open discovery and depose Maggie Fleming and others. (Dkt#237: P. 2) in that letter Plaintiff placed Defendants on notice as to his request for sanctions under Rule 11 and 37. Defendants filed an opposition, and ultimately Judge Rye denied that request relying on issuance of ruling on summary judgment and close of discovery. (Dkt# 238) The issue

was raised again when Plaintiff listed all three DA's on his witness list. Plaintiff raised the issues again and this Court partially granted Plaintiff's request and allowed the deposition of Maggie Fleming and Andrew Isaac but not Roger Rees to move forward.

A subpoena with a document request was served on Ms. Flemings and defendants vigorously objected to production of any record by Ms. Fleming. (See Exh. E to Zareh Decl.) Plaintiff served his response to the objection served. (See Exh. F to Zareh Decl.) On August 16, 2022, Plaintiff deposed Maggie Fleming. At her deposition, initially Fleming agreed to produce the records. Defendant raised his objections again. There were multiple conversations about the production of these records and at each and every step, Defendant was relentless and adamant about his objections to the production of these records. Finally, Fleming refused to produce any records which included the email exchange between Cheif of police and Maggie Fleming before filing criminal charges. (See ¶ 9, Zareh Decl.)

In fact prior to Fleming's deposition Mr. Moriarty contacted Ms. Fleming and had a discussion with her about her upcoming deposition and issues relating to her deposition. Ms. Fleming was not forthcoming about that conversation. In fact, she went to great deal to conceal the existence of the email that was disclosed at her testimony at trial. As this Court is fully aware, Fleming at her deposition denied having knowledge of the eyewitness account before filing and never once referred to her email exchange between her and chief of police. (See ¶ 10, Zareh Decl.)

In fact she lied at her deposition when she asserted that she did not rely on an eyewitness account and that her memory five years later were better than the letters she sent to the California Attorney General, newspaper reporter and her statement to National Police Foundations investigations that she relied on eyewitness account before filing criminal charges. This was a coordinated attempt by Defendant to mislead Plaintiff. Needless to say that she changed her false deposition testimony and finally told the truth at trial. (See ¶ 11, Zareh Decl.)

Plaintiff sought this Court's assistance in compelling the production of the records from Ms. Flemings. Again, Defendants objected and prevented the production of any records. At pretrial conference when this Court, denied Plaintiff request for production of documents from Fleming, ordered defendants to search and find any missing records that was not previously disclosed. On September 30, 2022, Defendants released 21 additional pages of police reports alleging they conducted a further search and

located 21 additional pages. But, they were all police reports and withheld the communications between the DA and APD. The trial was set to start on October 3, 2022. Essentially three days before the trial they produced another set of records. Needless to say the prejudice to that late production of records had on Plaintiff's preparation for trial. (See ¶ 12, Zareh Decl.)

After the late production of records, Plaintiff filed a motion for reconsideration to amend the complaint. The court denied that request. On September 30, 2022, Plaintiff's counsel filed a request to vacate the trial date impose monetary sanctions or in the alternative to impose issue sanctions and monetary sanctions in light of the fact that Defendants yet again concealed significant information from Plaintiff. Defendants objected and filed their opposition. In its order this Court stated that "Nonetheless, as the Court is deciding probable cause after the jury renders its verdict, the Court can address the relevance of the reports to probable cause at that time, along with the sanctions request." As a result, the trial started on October 3rd.  (See ¶ 13, Zareh Decl.)

Thus far, Defendants have released 3 sets of documents totaling about 850 pages and more to come after their motion for summary judgment was granted and after close of discovery. They never produced the fiber report. Needless to say the significance of Ms. Flemings records to Plaintiff's case. These records are central to Plaintiff's case. (See ¶ 14, Zareh Decl.) Clearly, there is no way to be assured that there are no other records, email and communications between the DA, Roger Rees, Andrew Isaac and APD. In fact, Defendant's continuous objections to the production of records speak volume and are in direct support of intentional concealment. Defendants completely disregarded the requirement of Rule 26 disclosure and yet they argued that Plaintiff failed to comply with Rule 26 disclosure when in fact Plaintiff disclosed all the relevant information during his deposition.

As a way of background, during this litigation, Defendants police officers and the City of Arcata, continued to assert that Plaintiff is a suspect and under investigation. This was a tactical move and gamesmanship to harass, cause emotional distress, and pressure Plaintiff to quit and dismiss the charges. This was not an accident. It is a strategy. For that reason, they never produced the fiber report which showed the murder weapon had fibers from other people's clothing's. The colors matched the clothing of other individuals who were participants at the events of the incident. However, as this Court noted,

Defendant's claim that allegedly Plaintiff is a suspect has no bearing to the issues in the case. (Dkt# 306, Page 4)

October 4, 2022, this Court heard testimonies that after Losey's false police report became public, falsely claiming Plaintiff was the assailant, that was picked up by the media, Lawson's friends and has gone viral.

As a result, once Losey's false report became public, every street corner, every place, every month banners and signs go up and make a claim that Plaintiff was identified as the assailant. This is what Losey started and took no steps to mitigate the issue by correcting the record. Defendants continue to conduct themselves as if Plaintiff is a criminal and a suspect and as such, they deliberately, take every step possible to block him from conducting proper discovery and being ethical in a civil proceeding.

ARGUMENTS

**1.   Defendant's Pattern Of Discovery Misconduct, Control And Concealing Significant And Highly Relevant Records Central to Plaintiff's case, Allowed Them To Shape A False Defense And Fraud Upon The Court**

"[A] responding party has an obligation to construe … discovery requests in a reasonable manner…[to] exercise reason and common sense to attribute ordinary definitions to terms and phrases." *L.A. Terminals, Inc. v. United National Insurance Company*, 340 F.R.D. 390 (C.D. Cal. 2022) ("responding party must give discovery requests a reasonable construction, rather than strain to find ambiguity.") The sanctions for failure to comply with Rule 26(a) (initial disclosure) and (e) (supplemental disclosure) are found in Rule 37(c). Fed. R. Civ P 37(c)(1). Federal Rule of Civil Procedure 37(c)(1) provides:

> (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence … In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1) (emphasis added).  Rule 26(a) applies to Initial Disclosures, and Rule 26(e) addresses the obligation to supplement Initial Disclosures and discovery responses generally. Fed. R. Civ. P. 26(a) and (e).

6

By the language of Rule 37(c)(1), expressly allows the Court to fashion an alternative sanction ("[i]n addition to or instead of this sanction . . . ."). See *Id.*; *West v. California Services Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. 2017) ("[I]f a party fails to disclose information as required by Rule 26(a) or (e), the party is not allowed to use to use that information … unless the failure was substantially justified or is harmless.")

Rule 26 provide the Court with authority to control the conduct of those who appear before them." *Jane Doe No. 1 et al v. Daniel S. Fitzgerald*, No. 20-10713, 2022 WL 4596557, at *4 (C.D. Cal. Sept. 21, 2022) citing *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996); see also *Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) (Federal Rule 37 sanctions and inherent power sanctions are interchangeable). In addition**, the "purpose of the rule [26] is to prevent the practice of 'sandbagging' an adversary with new evidence."** *West*, 323 F.R.D. at 303 n. 9.

"Federal courts have the authority to sanction litigants for discovery abuses both under the Federal Rules … and pursuant to the court's inherent power to prevent abuse of the judicial process." *Meta Platforms, Inc. v. BrandTotal Ltd.*, --- F.Supp.3d ---, No. 20-cv-07182, 2022 WL 1990225, at *4 (N.D. Cal. June 6, 2022). Discovery sanctions "must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763-64 (1980).

Under Rule 37(c), which allows for the Rule 37(b) sanctions, once a showing that the failure is neither substantially justified or harmless has been made, the Court may impose sanctions including instructing the jury, a monetary award, or any of the options from Rule 37(b)(2)(A)(i)-(vi). Fed. R. Civ. P. 37(c)(1). "[D]istrict courts have wide latitude under Rule 37(c)(1) and … the burden is on the party facing sanctions to prove harmlessness." *Merchant v. Corizon Health, Inc*., 993 F.3d 733, 741 (9th Cir. 2021) (emphasis added); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1107 (9th Cir. 2001)

Defendants' discovery misconduct was nothing but sandbagging Plaintiff from the inception of this case. Plaintiff made every attempt including seeking an order to reopen discovery to obtain these records. Defendants were successful in their efforts to conceal the records. The fact that they concealed these highly relevant records and central to Plaintiff's case shows that it was not a harmless error. This

7

was a trial tactic. It prevented Plaintiff from asserting a claim while the case was still pending and provided the defendants with the opportunity to raise a defense which Plaintiff could not have defeated without these highly relevant documents.

If Maggie Fleming had not changed her story, after giving the opposite information at her deposition, we would not have had the critical and highly relevant email exchange between her and chief of police. From the inception of this case, Defendants made every effort to hide significant information from Plaintiff. Concealing the fiber report allowed them to argue that Plaintiff was the sole suspect. Concealing the email from Fleming to the news reporter helped them shape their false defense at the summary judgment and resulted in dismissal of some of the defendants and prevented Plaintiff from asserting new claims.

Concealing the 21 page police reports prevented Plaintiff from locating the witness who was with Plaintiff at the time of his injuries and would have provide substantial information on the issue of probable cause and their constant attacks at trial falsely alleging lack of doubt that Plaintiff did it.

Concealing the email exchange between Fleming and Chapman, the chief of police, until 2 days into the trial was in furtherance of their misconduct to keep defendants out of the case and make their false claims undefendable. As this Court is aware, Defendants vigorously at every turn try to control Fleming. They called her before the start of her deposition and counseled her as to what to say and what to hide. When she agreed to produce the records, Defendant made every effort to prevent that production. If they had nothing to hide, they would not have objected and blocked production.

When Plaintiff cross-examined Ms. Fleming at trial, the expectation was what she said at her deposition. It was a complete surprise and shock that Fleming changed her testimony from not having the information about Martinez to having a written email about it before filing charges. Defendant's intent was to block Plaintiff from having such records so they can win. That is prejudicial, improper and misconduct under the discovery Rules. This was not harmless when it resulted in dismissing defendants based on their concealment and sandbagged the Plaintiff from asserting timely claims during the litigation. This was an egregious misconduct.

**2.      Defendants' Pattern Of Misconduct Was General Miscarriage Of Justice.**

In *Hausman v. Holland Am. Line-U.S.A.*, 2016 WL 51273, at *10 (W.D. Wash. Jan. 5, 2016), the court took action to avoid a miscarriage of justice. Specifically, when the court was presented with new evidence after trial, the court vacated the judgment and ordered a new trial. The important facts:

> Approximately two weeks after the trial concluded, Defendants were approached by Mr. Hausman's former personal assistant, Amy Mizeur, who informed them that Mr. Hausman had deliberately sabotaged Defendants' pre-trial discovery efforts. Ms. Mizeur's allegations are numerous, but can be generally categorized as follows: (1) Mr. Hausman deleted and/or failed to disclose the existence of emails that he knew were relevant to this lawsuit, (2) he tampered with witness testimony, (3) he fabricated and/or exaggerated the extent of his alleged injuries, and (4) he testified falsely at trial. See, generally, Dkt. No. 219. (*Id*. at *2.)

In evaluating the issues:

> Defendant must establish that Mr. Hausman's discovery misconduct substantially interfered with their ability to fully and fairly present their defense at trial…Defendants must show that Mr. Hausman's misconduct substantially interfered with their ability to prepare the case and defend against Mr. Hausman's claims fully and fairly…Where discovery material is deliberately suppressed, its absence can be presumed to have inhibited the unearthing of further admissible evidence adverse to the withholder, that is, to have substantially interfered with the aggrieved party's trial preparation…

> This Court has already concluded that Mr. Hausman intentionally deleted and/or failed to disclose the emails in his jrhausman@hotmail.com and jimrhausman@yahoo.com accounts. Therefore, Defendants are entitled to the presumption that the destruction/suppression of the emails substantially interfered with their trial preparation…Thus, the burden now shifts to Mr. Hausman to establish by clear and convincing evidence that the withheld material was in fact inconsequential. (*Id*. at *10 (quotations/modifications omitted).

The Hausman court ultimately concluded:

> It is this trial judge's responsibility to ensure that a party is not the victim of a miscarriage of justice…Based on the evidence presented at the evidentiary hearing, this trial judge concludes that a miscarriage of justice occurred in this case. Accordingly, the Court HEREBY…VACATES the Judgment entered in this case…and…ORDERS a new trial. (*Id.* at *12.)

Concealing highly relevant and critical records as described above resulted in dismissal of various defendants and claims. This prejudicial conduct was solely done to benefit defendants. Defendants' objections to Fleming's production of records highlight their intentional act to prevent the disclosure of the emails. Defendants **<u>knew</u>** about the existence of such email and that was precisely the reason they objected to production of any records from Fleming. This is especially true since they claimed, Plaintiff was in possession of ALL police reports. The fact that Defendant claimed Plaintiff has all the police reports and yet objected to production of Flemings records makes no sense. If truly at issue were the police reports,

then Defendant's objection was unnecessary. This Court cannot consider these factors in a vacuum. The totality of circumstances shows deliberate concealment. First, Defendants concealed the existence of the written fiber report and continued to harass him with being a sole suspect. The written fiber report from the murder weapon showed at least 3 other suspects. The fact that fibers from Plaintiff's clothing was NOT on the murder weapon was a significant factor in this case. They made every effort to hide it.

Then they ignored Fleming's communications with APD. In fact they have yet to produce any communications by email from anyone at APD to DA's office. Yet Fleming testified that they were receiving updates by email.

Defendants objected to production of record by Fleming, contacting Fleming and speaking to Fleming about the deposition, Fleming lying at her deposition and concealing the existence of the email at her deposition for the benefit of defendants coupled with continued objections by defendants Defendant's knowledge about existence of this email and other communications that is harmful to Defendant's case. This was a coordinated and deliberate effort to divert the court and Plaintiff's attention from disclosing the email and other communications yet to be disclosed.

At her deposition, Ms. Fleming, after talking to Mr. Moriarty, chose not to disclose the existence of the email communications from Chapman and instead claimed she relied on false fiber report to file charges to protect the Defendant.

At issue, is the discovery of extensive communications between the DAs office and Arcata Police department 2 days into the trial. Ms. Flemings testimony on October 4, 2022, at trial, about an email from Chief Chapman to her regarding filing of charges and existence of eyewitness account from Martinez, Chandler and Clark, prior to the DA filing murder charges against Plaintiff. Also she testified that there were continuous communications with her office prior to the receipt of the written reports. As this Court is aware, to this date only one email has been produced which related to Fleming's response to a news reporter and forwarding the email to chief of police. Plaintiff has no records on that important topic.

It would be an understatement to say that these communications were intentionally withheld because they were central to Plaintiff's case. Flemings testimony at trial was complete reverse of what she testified at her deposition. Only the production records requested could have prevented what we are facing

today.  Defendants and their counsels' conduct were aimed at miscarriage of justice and to limit their own liability.

Defendant knew about the existence of this email and other potential communications when they objected, vigorously, to the production of any records from Fleming. Clearly, police reports were not at issue since they produced them. At issue were the communications between the DA's office and police officers. Without having all the records, Plaintiff continues to be prejudiced and placed in an extremely difficult position to proceed at trial to cross examine Losey and Dokwelier without the befit of these records. The trials are not supposed to be a fishing expedition. This Court, over plaintiff's objection allowed disclosure of Plaintiff's juvenile records that were over 10 years old. This is double standard.

The concealment all communications between the DA's office and Arcata Police Department is at heart of this case. It is central to Plaintiff's claim. Their concealment and withholding of these highly relevant communications were nothing but deliberate conduct to mislead Plaintiff and fraud upon the court. This has been the pattern and practice of defendants and a flagrant disregard for discovery rules and court orders. They continue to conceal and block Plaintiff from receiving any records with malice and improper actions. This is more than a prejudice therefore, sanctions under Rule 37(b)(2)(A)(vi) is the only remedy. The court can still move forward on the issue of damages.

Throughout this process, Plaintiff has received significant sanctions while defendants enjoyed their continues pattern of misconduct and concealment. This is nothing but miscarriage of justice. It is time to stop this practice for good. This Court has found that medical personnel who treated Plaintiff cannot be called to testify since the disclosure of their information was at Plaintiff's deposition and not at the time of Rule 26 disclosure. Plaintiff was precluded from deposing Roger Rees. Defendants were dismissed based on concealment of records. It is time to apply the same standard to Defendants and not let them get away with it.

This newly discovered email shows exactly what Plaintiff asserted all long. Too late to take back the clock in the middle of trial. However, this Court cannot simply turn a blind eye of their pattern of misconduct. Looking at the history of discovery, requires sanctions under Rule 37(b)(2)(A)(vi).

**3.  All The Defendants Are Before This Court As To Claim #9 And Sanctions Are Appropriate Against All Parties, Non-Parties and Their Attorneys.**

The decision to impose sanctions under Rule 37 is left to the court's discretion. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Forro Precision, Inc. v. IBM*, 673 F.2d 1045, 1053 (9th Cir.1982). Exercise of that discretion has been "encouraged" when " counsel or a party has acted willfully or in bad faith in **failing to comply with rules of discovery** or with court orders enforcing the rules or in flagrant disregard of those rules and orders." *G-K Properties v. Redevelopment Agency,* 577 F.2d 645, 647 (9th Cir.1978). In *G-K Properties*, the Ninth Circuit went on to say:

> Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism.

*Id*. This court may impose even the "most severe" sanction to fulfill the purpose" not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League*, supra, 427 U.S. at 643, 96 S.Ct. at 2781.

**A.  Sanctioning a former party**

First and foremost, this Court has jurisdiction over all parties since Claim 9 is still pending. At any rate, courts retain authority over former litigants until judgment is entered. In *Crostley v. Lamar County, Texas*, 717 F.3d 410 (5th Cir. 2013),the Court reversed the trial court for not re-joining the previously dismissed (with prejudice) defendant, Lamar County. Id. at 421.

> Because the district court's dismissal of the claims against Lamar County was not a final judgment, and because the order adjudicated fewer than all the claims and liabilities of fewer than all the parties, the dismissal did not end the action as to Lamar County and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

*Id*. quoting Fed. R. Civ. P. 54(b). See also *Southeastern Pennsylvania Transportation Authority v. Orrstown Financial Services, Inc*., 12 F.4th 337, 352 (3rd Cir. 2021) (affirming district court's grant of motion to reassert claims against previously dismissed defendant); *McDonald Apiary, LLC v. Starrh Bees, Inc*., No. 14-CV-351, 2016 WL 4919885, at *5 (D. Neb. Sept. 14, 2016) (granting motion to re-add previously dismissed, with prejudice, defendant); *Gammino v. American Telephone and Telegraph Company*, No. 12-666, 2013 WL 6154569, at *2 (D. Del. Nov. 22, 2013) (same).

This is true even if the dismissal was "with prejudice":

While there are instances where 'with prejudice' functions as final within a case proceeding at the prejudgment phase of litigation, this is not such an instance. Where a plaintiff submits the same exact matter for reconsideration within the same case – without making any changes – then 'with prejudice' has finality. Here, Plaintiffs do not submit the same supporting facts against the same previously dismissed Defendants. Therefore, the previous dismissal of these Defendants is not so final that the Court cannot allow Plaintiffs to rejoin them when justice so requires.

*In re: EpiPen Direct Purchaser Litigation*, No. 20-cv-00827, 2021 WL 4892231, at *6 (D. Minn. Oct. 20, 2021) (allowing the movant to re-join previously dismissed parties).

As a result, Plaintiff seeks sanctions against all parties in two forms. Plaintiff seeks an order against Defendant Losey to exclude any arguments or present any evidence relating to existence of probable cause. This Court should find for Plaintiff as was done in the state court that there were no probable cause.

In addition as to other defendants, Plaintiff seeks an entry of default against all defendants on Count 9.

### B.    Sanctioning non-parties

Sanctions against non-parties have been awarded, although they appear to be individuals closely-aligned with corporations. See *Chambers v. NASCO, Inc*., 501 U.S.32 (1991) (a non-party shareholder); David v. Hooker, Ltd., 560 F.2d 412 (9th Cir. 1977) (sole corporate officer). "[E]ven in the absence of statutory authority, a court may impose attorney's fees against a non-party as an exercise of the court's inherent power to impose sanctions to curb abusive litigation practices." *Corder v. Howard Johnson & Co*., 53 F.3d 225, 232 (9th Cir. 1994)

This Court ordered Flemings deposition. Also, Fleming was subpoenaed to her deposition. Her lies and coverups were significant burden and expense on Plaintiff and in violation of Rule 45 (f) & (e ). "[T]he issuing court - may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). "The only authority in the Federal Rules … for the imposition of sanctions against a nonparty for failure to comply with a subpoena duces tecum is Rule 45(f)." *Pennwalt*, 708 F.2d at 494.

The close connection between Losey and Fleming is undeniable. Fleming made no attempt to place Losey on the Brady list. Losey's father was an investigator at the DA's office and well respected.

Covering up and making false claims at her deposition to protect Losey is another example of their close relationship.

This Court had ordered Plaintiff to pay Flemings out of pocket expenses. Needless to say that the County pays her expenses and she will not be incurring any expenses. For example, she is requesting over $700 in costs for driving with her attorney from Humboldt County. Over $340 is for mileage and gas. A round trip airline ticket was $170. (See ¶16, Zareh Decl.) As a result, Plaintiff seeks an order for not paying any expenses to Fleming and reimbursement of the cost of her deposition and its transcripts. (Id. ¶15 & Exh. G to Zareh Decl.)

### C.    Sanctions Against Counsel

Counsel may be sanctioned with a money award under Rule 37(g). Fed. R. Civ. P. 37(g)(3). "Attorneys practicing before the district court must comply with the rules of professional conduct and ethical violations may serve as a basis for imposing sanctions." *Englebrick v. Worthington Industries, Inc.*, 620 F. App'x 564, 567 (9th Cir. July 6, 2015) (reversing a failure to sanction attorneys were the court "did not provide [the accusing party] with the opportunity to make its case [for sanctions] through an evidentiary hearing.")

"[I]t is well within the province of federal district courts to regulate the conduct of lawyers and parties appearing before it, particularly where they have not adhered to ethical standards." Jane Doe, supra at *4.

"Any attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

To this moment, Plaintiff does not have a copy of the email Ms. Fleming referenced. She did not bother to bring that email with her because defendants objected to production of any records. At this juncture with the amount of prejudice Plaintiff endured, can only remedied with terminating sanctions. This Court should vacate their answer and enter a default against them on all the reaming counts including count 9.  If this not rial by ambush one would wonder what is.

Plaintiff incurred significant expenses and were prejudice with the concealment of these records. Plaintiff was precluded to conduct proper discovery, depose the defendants with this critical email and present a proper defense at summary judgment. At summary judgment Plaintiff suffered a great deal of prejudice as a direct result of concealing these records since many defendants were dismissed. Plaintiff was prevented from adding new claims as a direct result of this concealment.

Defense counsels engaged in a pattern of misconduct and abuses in the discovery process. Releasing over 860 pages of records after summary judgment was intentional and to prevent Plaintiff to prejudice Plaintiff. The same is true about their objections to the production of records from Fleming. They sandbagged Plaintiff and created a trial by ambush.

There is no question defendant's objections to document production from Fleming was only to conceal this email and others. To prevent the production and to control the litigation for their own benefit, Defendant continued his concealment efforts with respect to this email and other communications between Defendants and the DA's office, instead he offered the 21 page police reports. This was a decoy. They withheld a significant number of records as irrelevant and privileged. Clearly, they did not anticipate Flemings would change her mind after her deposition and disclose the exitance of the email. This is nothing but fraud upon the court and flagrant violation of discovery rules. As a result, this Court should impose sanctions entering a judgment in Plaintiff's favor and allow the jury to decide the issue of damages. In addition, Plaintiff incurred significant costs in deposing Ms. Fleming, engaged in meet and confer process, filing motions and letters with the court directly relating to the issues in discovery. Plaintiff incurred $40,125,000 in attorney's fees and defense counsel should reimburse Plaintiff.  (See ¶¶14-17, Zareh Decl.)

## CONCLUSION

As a result, Plaintiff seeks:

1. Against Losey: Finding on the issue of probable case for Plaintiff that there was no probable cause.

2. Against all Defendants: Entry of default on count 9 against all defendants.

3. Against Maggie Fleming: Payment of $2,313.86 and no travel expense to be paid by Plaintiff.

4. Against Defense counsels: Payment of $ $40,125,000 in attorney's fees.

1

Dated: October 17, 2022                  Respectfully Submitted,

2

3                                                 */s/ Elizabeth Zareh*
                                         By: _____
4                                            Elizabeth Zareh
                                             Attorneys for Plaintiff, Kyle Zoellner
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICTAE OF SERVICE

I, Elizabeth Zareh, certify that I am over the age of 18 years and not a party to the within action. My business address is 75 Broadway Street, Ste 202, San Francisco, CA 94111.

On October 17, 2022, I served a copy(ies) of the following document(s):

PLAINTIFF'S NOTICE OF MOTION AND MOTION UNDER RULE 37 AND 11 FOR ISSUE & MONETARY SANCTIONS

on the parties to this action by placing them in a sealed envelop(s) addressed as follows:

Castillo, Moriarty, Tran & Robinson
Patrick Moriarty, Esq.
John Robinson, Esq.
75 Southgate Ave
Daily City, CA 94015
Patrick Moriarty pmoriarty@cmtrlaw.com
John Robinson  jrobinson@cmtrlaw.com

Nicholas R. Kloeppel
THE MITCHELL LAW FIRM, LLP
P.O. Drawer 1008
426 First Street
Eureka, CA 95501
Phone: (707) 443-5643
Fax: (707) 444-9586

☐     (By EMAIL) I caused to be transmitted by Internet from email address elizabeth@zarehassociates.com the document(s) to: Patrick Moriarty <PMoriarty@aghwlaw.com>

The transmission was complete and the system did not report an error message.

■ (BY CM/ECF NOTICE OF ELECTRONIC FILING: I electronically filed the documents with the Clerk of the clerk by using CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on October 17, 2022 at San Francisco, California.

*/s/ Elizabeth Zareh*

_____

Elizabeth A. Zareh