Elizabeth Zareh (SBN# 182871)
75 Broadway Street, Ste 202,
San Francisco, CA 94111
Telephone: (415) 830-3031
Facsimile: (415) 830-3031
Email: elizabeth@zarehassociates.com

Attorney for Plaintiff
Kyle Zoellner

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| KYLE C. ZOELLNER, | Case No. 3:18-cv-04471-JSC |
|---|---|
| Plaintiff, | PLAINTIFF'S REPLY TO OPPOSITION TO OPPOSITION TO MOTION UNDER RULE 37 AND 11 FOR ISSUE & MONETARY SANCTIONS |
| V. | |
| CITY OF ARCATA, et. El. | Date: 12/1/22 |
| Defendants. | Time: 10:00 a.m. |
| | Location: 450 Golden Gate Avenue |
| | San Francisco, California 94102 |
| | Courtroom: 8 (17th Floor) |
| | Judge: Hon. Jacqueline Scott Corley |

TABLE OF CONTENT

INTRODUCTION .................................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................................... 2

ARGUMENT ............................................................................................................................................ 5

    1.    Sanctions Are Appropriate When Defendant Intentionally Failed To Comply With This Court's Order To Produce Police Reports. Defendant Concealed The Police Report Sent In An Email Dated April 19, 2017 From Chapman To Fleming For Their Own Gain. ................................................................ 5

    2.    Issue and Monetary Sanctions Are Appropriate When Defendants And Their Counsel Knew About The Existence Of The Late Produced Records And Made Every Effort To Block The Production For Their Own Gain .......................................................................................................................................... 8

    3.    Issue and Monetary Sanctions Are Appropriate Since The Outcome Of The Case Would Have Been Different If Plaintiff Had All 880 Pages Of Late Produced Records In A Timely Fashion ............. 11

    4.    Defense Counsel's Misconduct Has No Limits: After Defense Counsel Talk To Fleming At Her Deposition, She Concealed The Truth .......................................................................................................... 14

CONCLUSION ....................................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**
*Edgerly v. City and County of San Francisco*, 599 F.3d 946, 953 (9th Cir. 2010) .................................. 13
Fed. R. Civ. P. 11 .......................................................................................................................... 5
*Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) ........................................................ 5
*Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986) ....................................................... 5
*Silva v. Brown*, 416 F.3d 980, 987 (9th Cir. 2005) .................................................................... 11
*Thompson v. Housing Authority of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) .................. 5
*U.S. v. Price*, 566 F.3d 900, 913 (9th Cir. 2009) ....................................................................... 11

**Rules**
Rule 26 ........................................................................................................................................... 7

INTRODUCTION

At trial this Court stated that it will address the issue of failure to disclose Exhibit 22 at a later time. Plaintiff believes now is the time to put an end into sharp practices and gross misconduct for violating this Court's order and intentionally concealing significant records that was central to Plaintiff's case and allowed Defendants to shape a false defense resulting in dismissal of defendants and claims and lies.

Defendants benefitted significantly from concealing the records. The concealment of the police report from Chapman to Fleming in April of 2017 before the charges were filed, and the fiber report benefitted Defendants significantly. As a result of concealment Defendants were able to file false declarations in support of their motion for summary judgment claiming lack of knowledge as to DA's decision to file criminal charges, preventing Plaintiff to present proper evidence at summary judgment, the court's reliance on false claims and therefore dismissing defendants, prevented Plaintiff from timely amending the complaint and alleging conspiracy and other claims, preventing Plaintiff from conducting proper discovery on keys and central issues to his case including probable cause.

If Plaintiff had these records in a timely fashion, Plaintiff would have conducted proper discovery and would have received admissible evidence. The evidence and the late produce records would have resulted in significantly different outcome in the case. Plaintiff would have been able to amend his complaint to survive many motions to dismisses filed by defendants, presented different defense at the summary judgment and most of all presented a different case at trial with respect to probable cause. The evidence directly relate to the issue of probable cause, defamation, against dismissed defendants and *Monell* claims. The outcome of the case would be different than what we have today.

Defendants selectively produce records and only produced what benefitted them. That is not how Rule 26 works and this is not a way to practice law. The fact is that concealment of these records benefitted Defendant in a significant way. As a result, they had the motive to do so. These records benefitted Plaintiff and would have prevented Defendant from making false claims at summary judgment. This intentional misconduct is the pattern and practice of Defendants.

The selective production, delay and concealment of records were orchestrated by Defendants and their attorneys to block Plaintiff from obtaining any record that would have benefit Plaintiff's case. This is consistent with their attorney's actions threating Plaintiff with criminal prosecution by continuously and

relentlessly claiming Plaintiff as the sole suspect and demanding dismissal of the action. This pattern and practice of discovery misconduct was to increase attorney's fees, frustrate Plaintiff's efforts to prosecute this case, block discovery and intentionally sandbagging Plaintiff.  A clear violation of the rules.

## FACTUAL BACKGROUND

Defendants concealed and never produced the written fiber report from Department of Justice's laboratory which conclusively concluded the fibers on the knife did not match Plaintiff's clothing. (See Exh. A to Zareh Decl.) The fiber report from April of 2017 concluded:

> "SUMMARY/RESULTS
> **The examined fibers recovered from the knife (#628-4) are dissimilar to fibers comprising the clothing of Kyle Zoellner** (#'s 561-1, 561-3, and 561-4)… (Emphasis added)
>
> EVIDENCE
> 'The following evidence related to this report was received by the DOJ Eureka Laboratory. Refer to the report from Criminalist Jyoti Malik above for a complete list of evidence received by the laboratory.
> 561-1) Pants from Kyle Zoellner
> 561-3) Black hooded sweatshirt from Kyle Zoellner
> 561-4) White short-sleeve shirt from Kyle Zoellner
>
> The following evidence was recovered by Criminalist Jyoti Malik:
> 628-4E, 628-4F, 628-4G, and 628-4H: Fibers recovered from the knife #628-4."   (*Id.*)

After close of discovery and summary judgment, on April 13, 2022, Defendants produced 860 pages of records. (Zareh Decl. ¶ 5) In it were an email dated April 20, 2017. (See Exhibit C to Zareh Decl) In addition Defendants produced records and emails dated from 2017 to 2019. (see Exh. D to Zareh Decl.) Of significance were an email dated November 13, 2018, where the chief of police requested to have all emails relating to Lawson's case save. (see Exh. B Zareh Decl.)

In that group were another email between Karen Diemer and Maggie Fleming dated January 24, 2019 where Karen Diemer, the City Manager wrote among other things referring to Charmaine Lawson that:

> Because she [Charmaine] continues to refer to it as blood DNA I believe her belief comes originally from a misread of a DOJ report by Tom Parker. I first saw this statement from her in the claim she filed against the City. At the time the claim was filed, to my knowledge no DNA of Zoellner's had been probable based on blood tests associated with the knife. I also had a conversation with Tom Parker a few weeks before that claim was filed where he stated that Zoellner DNA was found on the knife - to which I told him I did not believe that to be true. This

was one of the main reasons I knew that Parker had broken his nondisclosure agreement as he was passing basically false information. (See Exh. E to Zareh Decl.)

Also an emails dated November 9, 2018 from Wayne Cox, chief investigator at the DA's office, to Dokweiler. (See Exh. F to Zareh Decl.) Missing from production was Plaintiff's Trail Exhibit 22.

At her deposition, Maggie Fleming testified that her office does not stamp or record the receipt of the police reports. (See Exh G to Zareh Decl) At trial she reversed that position and testified on the police report she received from Chapman dated April 19, 2017. (See Exhibit H to Zareh Decl. (Plaintiff's Trial Exhibit 22)) At her deposition she testified that: "I believe Tuesday after [the stabbing] the knife arrived, the criminalist alerted us to the fact she believed there was a fingerprint on the knife." (See Exhibit G to Zareh Decl. P. 6: 13-16) Consistent with her testimony at trial Fleming testified that there was a fingerprint on the knife, and it did not match Plaintiff's. (See Exh. J to Zareh Decl.)

Fleming testified at her deposition that she talked to Patrick Moriarty about the areas that might be discussed at deposition and the timeline for the charging. (See Exh. G to Zareh Decl. P. 8-9) At first, she testified that she had no email exchanges about this case but, then after further questioning she finally admitted to having email communications with Moriarty about Andrew Isaac.

On October 4, 2022, Fleming testified in person at trial. At trial Fleming testified that she received a written report from chief Chapman. She testified:

> Q. Okay. So aside from these few reports, you didn't have any other written reports, correct?
> A. I received a written email.
> Q. What was that written email?
> A. That was from chief chapman.
> Q. And what was the email?
> A. It was stating the witnesses that had identified Mr. Zoellner as the suspect.
> Q. When was that?
> A. That was over the lunch hour on April 19th. (See Exhibit I to Zareh Decl. P. 138:1–10)

Fleming referred to the email as "summarizing the state of the evidence." And that relied on that eyewitness account to file criminal charges. (See Exhibit I to Zareh Decl. P. 138: 14-24) Pursuant to this Court's order, the email was produced couple days later and was marked as Plaintiff's Trial Exhibit 22. This Court inquired about production of the email:

> THE COURT: Because that's not what it's being used for. What it's being used for is because she testified in her deposition that that was the reason why she had filed the charges. **The testimony**

**today is a bit different. There's apparently an email from chief Chapman. Was that produced?**
MS. ZAREH: **No.**
THE COURT: We'll have to address that later. I don't know why with that wasn't produced.
MR. MORIARTY: We didn't have it.
THE COURT: Well, he was chief of the Arcata police department.
MR. MORIARTY: That's fine.
THE COURT: And the Arcata police department was -- or the county was a defendant until summary judgment.
MS. ZAREH: Yes.
MR. MORIARTY: Hold on. You said the county was a defendant?
THE COURT: Was it?
MS. ZAREH: The police department and also chief Chapman.
THE COURT: Police departments aren't --
MR. MORIARTY: The city, correct.
THE COURT: City, right.
MR. MORIARTY: But we'll address that.
**THE COURT: We'll address that later**.
MR. MORIARTY: That's fine.
THE COURT: Anyway, they're going to get some leeway there. I don't know why that email wasn't produced. All right... (See Exhibit I to Zareh Decl. Trial Transcript Vol. 2, P. 182:1 – 17)

On November 18, 2021, Plaintiff deposed defendant Thomas Chapman the former chief of police from Arcata. He is still a defendant in this case as to Claim 9. Elizabeth Zareh inquired about meetings and communications between the DA's office and the police department regarding evidence, witnesses and eyewitness account before criminal charges were filed and Chapman concealed that he provided a report or any information to the DA's office. (Zareh Decl. ¶ 34)

On September 15, 2022, this Court ordered Defendant to produce every single report. On September 22, 2022, 10 days before the start of the trial, pursuant to this Court's order, defendant Losey produced a new set of documents consisting of twenty one pages of police reports. Yet, it failed to include the police report Chapman send to Fleming on April 19, 2017. (Plaintiff's trial Exhibit 22)

Elizabeth Zareh personally reviewed the police reports. They were marked as bate numbers 11448 to 11468. These reports were never produced and contained significant factual information that would have change the outcome of the case and would have resulted in discovery of significant facts relating to probable cause. The police reports included critical and significant information central to Plaintiff's case. (Zareh Decl. & 13) For example, there was a witness that stated:

"He initially observed about 15 to 20 people in the front yard. He noticed a male, that he later recognized from media coverage as "Kyle Zoellner," laying on his back on the paved pathway approximately 5-8 feet from the residence front door… He also described him as having his eyes open, **looking around and making eye contact but not being responsive or communicative**. He described his clothing as possibly a white or grey shirt… Pedroza didn't see anything in Zoellner's hands or any objects laying near him. He didn't notice Zoellner wearing or carrying any bags and didn't notice any bulges in his clothing or pockets. Pedroza said he had never met Zoellner prior to this incident." (Zareh Decl. ¶ 13) (Emphasis added)

The newly released police reports identified another witness by the name of Ashley Alvarez as a potential witness to the stabbing. (Bates 11459- 11460 & 11462) (Zareh Decl. ¶ 14) From the newly released police reports Plaintiff learned about another witness referencing a Facebook post which stated, a friend of Lawson stabbed him by accident. (Bate 11461) (Zareh Decl. ¶ 15)

Also, Plaintiff learned about yet another witness, unaffiliated to Plaintiff, who was worried about being charged as an accessory to murder of Lawson. Bate # 11451. There is a video of the events from the night of stabbing which was never produced. Bate # 11453. Another report identifies another witness who was present at the time of stabbing. (Bate # 11462) (Zareh Decl. ¶ 16)

## ARGUMENT
**1.      Sanctions Are Appropriate When Defendant Intentionally Failed To Comply With This Court's Order To Produce Police Reports. Defendant Concealed The Police Report Sent In An Email Dated April 19, 2017 From Chapman To Fleming For Their Own Gain.**

Fed. R. Civ. P. 11, provide: "Failure of counsel or of a party to comply with . . . any order of the Court may be grounds for the imposition by the Court of any and all sanctions . . . within the inherent power of the Court." "District courts have inherent power to control their dockets," and in exercising that power, a court may impose sanctions. *Thompson v. Housing Authority of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986). A court impose sanctions, including terminating sanctions, for a party's failure to obey a court order or failure to comply with local rules. See, e.g. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (imposing sanctions terminating for failure to comply with an order); *Malone v. U.S. Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987) (imposing terminating sanctions for failure to comply with a court order); *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986) (sanctions for failure to prosecute and to comply with local rules).

On September 15, 2022, at pre-trial conference, this Court ordered Defendant to produce every single police report in this case. Yet, Defendant concealed Plaintiff's trial exhibit 22. Exhibit 22 was a police report in a form of an email and was never produced it. Also, never produced were a copy of the fiber report from 2017. The fact that defense attorneys called Fleming shows that they pressured her not to disclose the April 19, 2017 report from Chapman. This email was central to their defense and their false declarations filed in support of the summary judgment claiming that Defendants did not know why the DA decided to file criminal charges. As a result, Fleming did not disclose that information at her deposition. However, after facing the jury and this Court eye to eye, she finally told the truth and revealed the email.

Exhibit 22 was a police report. Exhibit 22 shows that on April 19, 2017, Fleming asked for police reports ASAP and Chapman provided a police report stating that three individuals "placed" plaintiff as a suspect. Since the document was produced before trial, Plaintiff never had the opportunity to ask Chapman at his deposition. And Chapman made every effort to conceal that information. As a result, Plaintiff was unable to seek any information or evidence as to how Chapman reached that conclusion and who he talked to obtain the information he listed. The issue is that when Chapman wrote that report, none of the three police reports referenced were prepared until April 26 and 27th. The fact that chief of police had critical information without the benefit of the written reports is of significance and central to Plaintiff's case. This is especially true since we know at least one of the reports was false. Plaintiff was unable to determine if there were other false reports presented to the DA since the DA never produced their file. This is critical to Plaintiffs case and also critical to the issue of probable cause. This could very well change the outcome of the case. It appears there are more reports that Plaintiff did not have and was concealed from Plaintiff.

Defendant's argument that Exhibit 22 was an email and Plaintiff never asked for "emails" is disingenuous at best. Exhibit 22 was a police report to the DA relating to certain witnesses "placing" Plaintiff as a suspect in a form of an email. Fleming saw it as a report too. The DA specially asked for "reports" and Chapman responded. As testified by Fleming and others police reports take different formats. It could be in person, oral or in writing in different formats such as an email. Just because it was

sent as an email, it does not change the fact that it was a police report. Defendant and their counsel intentionally placed Plaintiff in the dark so they can succeed. This email directly relates to the issue of probable cause and Plaintiff was unable to conduct any discovery from Chapman and the all the deputy DA's who worked on the case including Andrew Isaac.

Defendant knew about the existence of Exhibit 22. Because: 1. The cheif of police ordered them to SAVE all the emails. 2. Defendants selectively produced emails from 2017 and concealed this one. 3. Chapman, the author of the report, was a named defendant in the case and was required under Rule 26 to disclose. 4. The City was a defendant and was required under Rule 26 to disclose. 5. The concealment allowed to make a false claim at summary judgment alleging lack of knowledge as to why the DA filed charges. 6. The concealment resulted in dismissal of claims and defendants. 7. To assure the continuation of the concealments defense counsel, Moriarty and Robinson, CALLED Fleming before her deposition and discussed the "**timeline for the charging**" and **"what information [she] had for charging."** (See Exhibit G to Zareh Decl. P. 8:24-3) 8. Fleming changed her testimony and finally disclosed the truth at trial. 9. The concealment allowed to raise unfounded and unexplored areas at trial which resulted in this Court relying on it. 10. The concealment prevented Plaintiff from conducting proper discovery as to the basis of Chapman's knowledge and extent of his knowledge before charges were filed. 11. Prevented Plaintiff from defending the summary judgment. 12. Prevented Plaintiff to discover admissible evidence central to Plaintiff's case and 13. Prevented Plaintiff to amend the complaint and address the very issue judge Chen was concern about at summary judgment.

Considering the magnitude and the significance of this document in this case, combined with selective production of records from April of 2017, demonstrate intentional violation of this Court's order and compels this Court as stated on the record at trial, to address it now. This is the time to address this issue and at a minimum impose issue sanction finding lack of probable cause and impose monetary sanctions. Without such sanctions defendant and their counsel will continue with the misconduct of concealing records. The time is now to put an end to this type of misconduct and pattern of practice.

### 2. Issue and Monetary Sanctions Are Appropriate When Defendants And Their Counsel Knew About The Existence Of The Late Produced Records And Made Every Effort To Block The Production For Their Own Gain

There is no dispute that Defendant produced emails from April of 2017 and were ordered by the chief of police to SAVE the emails relating to Lawson's case. The fact that they produced some but not all emails from 2017 shows selective production and intentional act. The information in Exhibit 22 was critical and central to Plaintiff's case and its concealment allowed Defendants to raise a successful false defense. The concealment allowed Defendants to falsely claim at summary judgment that the defendants did not know why the DA decided to file charges. This was a lie and judge Chen relied on the false declarations filed by defendants when he partially granted the summary judgment.

Defendant attempts to coverup their orchestrated gross misconduct, without any declarations from any of the parties and/or the IT Department about its alleged false retention policy. This argument falls flat on its face when the chief of Police ordered them to save the emails, they produced emails from 2017, Exhibit 22 was a police report and that this is an ongoing investigation. No police department deletes records relating to an investigation let alone an ongoing investigation.

This creative yet another false representation made by counsel is in line with their attempts to block production of records, selective production of records, asking Fleming not to disclose the mail and making false, filing false declaration at summary judgment to mislead the court and baseless representations such as this one. As objected by Plaintiff, this argument was raised late. It was raised after trial and not during the discovery. At no time Defendants informed Plaintiff that there was two year purge policy. In fact the email dated 2017, produced by Defendants show this is a false claim. This false representation shows defendant and their counsel's desperation to coverup. Using another lie to coverup their intentional concealment.

Defendant and their attorney's conduct was intentional because they knew Exhibit 22 existed and would significant impact their case negatively. They knew it was a police report and would have defeated their defense raised at summary judgment and at all the motions they filed to dismiss the complaint. This intentional concealment was significant to Defendants defense since it prevented Plaintiff from amending the complaint and raising the proper factual issues that were truly disputed.

Fleming was ready to produce the records at her deposition. Fleming testified at her deposition that she reviewed the file and had it with her. Defense counsel made every attempt to block the disclosure

at deposition. The fact that Fleming testified at her deposition differently than she did at trial, points to the effect defense counsel had on Fleming when they talked to her before the start of her deposition. Defense counsels **called** Fleming before the start of her deposition. In that phone call, defense counsel talked about the "**timeline for the charging**" and **"what information [Fleming] had for charging.**" (See Exhibit G to Zareh Decl. P. 8:24-3) After that conversation with Moriarty and Robinson pretty much assuring Fleming that Plaintiff does not have Exhibit 22, Fleming to protect a former investigator's son from her office testified as requested. She falsely claimed that she did not have the eyewitness report before charging and had no log or stamp on evidence or police reports as the came in.

At trial, sitting in a court room, looking at the jury and this Court eye to eye, feeling the weight and the need to be honest and tell the truth, she ignored Moriarty's instructions and bravely changed her testimony to tell the truth. It was only on the second day of the trial that Plaintiff discovered about the April 19, 2017 police report for the first time and that the DA's office maintains a log of all evidence it receives.

The very fact that Defense counsels discussed **"what information [Fleming] had for charging"** is of significance, at a minimum it shows that Defense counsel knew about the email before Fleming's deposition. But the fact is that not only they knew they had the email and concealed it.

Defense counsels claim that they did not "posses" the police report. That shows at a minimum they knew about it. And yet they filed false declarations in court and made significant misrepresentations in court to succeed in their efforts to dismiss defendants and claims. And to prevent Plaintiff from preparing his case.

However, their claim of not possessing the email is unsupported by admissible evidence and is a pretext. First, there is no admissible evidence before this Court to show that they did not possess the email. Counsel's argument is not based on evidence is based what counsel attempts to coverup. There is no declarations from a arty to that effect. Therefore, should not be considered.

Second, the cheif of police ordered emails relating to this case to be saved. Therefore, the emails were saved and Defendants possessed the email. Third, Chapman, the author of the email was a named Defendant in this action and still is as to count 9. Therefore, he was required under Rule 26 to disclose the mail. Fourth, the City of Arcata was a named defendant and still is as to Count 9. The City was required

under Rule 26 to disclose the email and also had to disclose the alleged 2 year purging policy. It never did. Fifth, Chapman was deposed, and he too concealed at his deposition the existence of the email or any communications between the DA's office and APD prior to charges being filed.

Defendants pattern of misconduct including ignoring this Court's order, was egregious and nothing but selective production of records for their own benefit. These are egregious intentional pattern and practice of misconduct. They only produced what benefitted their case and excluded any record that helped Plaintiff's case. This is obstruction. This is intentional abuse of discovery and sandbagging in violation of the rules.

Also, Defendants intentionally concealed the fiber report. The written fiber report showed that the fibers found on the knife did not match Plaintiff's clothing. This was an intentional act to sandbag Plaintiff's case. There is no excuse or reason to conceal a written fiber report which shows fiber on the knife did not match Plaintiff's clothing unless the goal is to do whatever it takes to win the case. This is a gross violation of the rules and warrants imposition of issue sanctions. At issue is repeated pattern of discovery misconduct and concealing the records at every stage of this litigation. Concealing records until after the ruling on summary judgment and after all motions to dismiss were filed. Intentionally releasing a few pages of unimportant records at a time shows intent. It was just drip drip release of records to increase Plaintiff's attorneys' fees and harass Plaintiff. This is bad faith. Due to Plaintiff's counsel's insistence, thus far, Defendants have released records in November of 2021, April of 2022, September of 2022 and October of 2022.  (Zareh Decl. ¶ 5)

Plaintiff incurred significant amount of cost in attorney's fees, time and expense to chase down Defendants for records. This is abuse of discovery. The selective production, delay and concealment of records were orchestrated by Defendants and their attorneys to block Plaintiff from obtaining any record that would benefit Plaintiff's case. (Zareh Decl. ¶ 18) This is consistent with their attorney's actions threating Plaintiff with criminal prosecution by continuously and relentlessly claiming Plaintiff as the sole suspect and demanding dismissal of the action. This pattern and practice of discovery misconduct was to increase attorney's fees, frustrate Plaintiff's efforts to prosecute this case, block discovery and intentionally sandbagging Plaintiff.

Also, as noted in the moving papers their aggressive objections to the production of records by Fleming speaks volume and speaks to their intent to which they offered no opposition. From the inception of this case Defendants engaged in deceptive and deceitful discovery misconducts. Elizabeth Zareh became counsel of record on January 31, 2020 and the complaint was amended four times. Plaintiff was entitled to these late produced records and should have had the opportunity to utilize these records to amend the claims, conduct proper discovery and defend the summary judgment.

**3.     Issue and Monetary Sanctions Are Appropriate Since The Outcome Of The Case Would Have Been Different If Plaintiff Had All 880 Pages Of Late Produced Records In A Timely Fashion**

Failure to disclose evidence cannot be harmless when reasonably competent counsel might have utilized it to yield a different outcome. *U.S. v. Price*, 566 F.3d 900, 913 (9th Cir. 2009) Plaintiff had a right to go before a trier of fact and present his best available case. (*Id.*) As noted by the 9th Circuit, the test is not absence of prejudice "the proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses... [I]f doubt exists, it should be resolved in favor of the defendant and full disclosure made... [T]he government [should therefore] disclose all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence*. U.S. v. Price*, 566 F.3d 900, 913 (9th Cir. 2009) "Impeachment evidence is especially likely to be material when it impugns the testimony of a witness who is critical to the" case." *Silva v. Brown*, 416 F.3d 980, 987 (9th Cir. 2005)

Had Plaintiff had all the records the outcome would have been different. For example, Exhibit 22 goes directly to the heart of the issue of probable cause. The chief of police wrote the report before having the benefit of the written reports for Chandler, Martinez and Clark. The written reports relating to these three were prepared in April 26 & 27th. At issue is what the police chief knew and when he learned it. Police chief's knowledge before filing charges is central and critical to the issue of probable cause. Since Losey and Dokweiler conducted the witness interviews and briefed the cheif. Were there other false reports? Chapman writes three witnesses placed Plaintiff as a suspect before any of the reports relating to these witnesses were prepared. What did he know? How did he know it? When did he learn? This email

relates to certain knowledge prior to charging the complaint. Plaintiff was never able to discover that information which is critical it his case.

In fact Defendant argued at trial that Martinez was an unreliable witness, yet the chief of police referred to Martinez as a critical witness for charging purposes. What did Chapman know that Defendant concealed? His knowledge and extent of knowledge directly relates to the issue of probable cause. It is not the Plaintiff that should be penalized. It is the defendants that concealed and benefited from that concealment that should be penalized. As this Court noted, now is the time to deal with that issue.

In addition, these emails and records would have changed the dynamic and progression of discovery and would have led to discovery of further evidence that is still being concealed. Plaintiff would have sought records from the DA, as he was denied when Judge Ryu denied that request. Plaintiff would have deposed Roger Rees.

Exhibit 22 would have prevented defendants from alleging lack of knowledge as to why the DA filed charges and at a minimum would have kept Dokweiler and Chapman as a defendant in the case. The late produced records would have changed the outcome of the summary judgment motion and all four motions to dismiss filed by Defendants. It prevented Plaintiff from amending his complaint and raising arguments and evidence to defeat these motions such as conspiracy, defamation and *Monell*. As noted by Judge Chen, conspiracy claim was made late and if Plaintiff had the records, he could have raised them earlier and the outcome would have been different. Exhibit 22 shows at a minimum conspiracy between Dokweiler, Losey and Chapman.  (Zareh Decl. ¶ 12 & 17)

The fact is that the concealed records plays a central role in the issue of probable cause as to Losey. As noted by this Court the issue of probable cause was that Plaintiff had to "prove that no reasonable officer with Mr. Losey's knowledge would have probable cause to believe" Plaintiff stabbed Lawson. (Dkt # 383, P. 1: 20-22) "[W]hat was required was a fair probability, given the totality of the circumstances." (*Id* at p.4:13-14) "Probable cause exists when, under the totality of the circumstances known to the [defendant,] a prudent person would have concluded that there was a fair probability that [the plaintiff] had committed a crime." (Id. P.4:6-8)

The concealed written fiber report prevented this Court to consider the fiber report in its analysis of totality of circumstances. Nowhere in its order this Court references the fiber report. The fiber report is

critical and central to the totality of circumstances analysis specially because this Court in its analysis wrote: "Losey did not have knowledge suggesting Mr. Zoellner could *not* have had a knife in a pocket of his clothes; instead a reasonable officer in Mr. Losey's position would have believed that Mr. Zoellner *could have had a knife*." (Dkt # 383, P. 8:22-28)

      This argument, lack of knowledge or possibility of having a knife in pocket, was never raised by the defendant. It was raised by this Court. However, the written fiber report is central to the Court's analysis relating to Losey's knowledge as to Plaintiff having or not having a knife in his pocket. The fiber report from DOJ from 2017 defeats the fair possibility of a claim that Plaintiff had a knife in his pocket. The fiber report from DOJ conclusively concluded that the fibers on the knife did not match any of Plaintiff's articles of clothing articles. All Plaintiff's articles of clothing were tested against the fibers found on the knife. As a result, Plaintiff could not have had a knife in his pocket.

      No one saw Plaintiff with a knife. Even Paris Wright admits that he did not see a knife he only saw keys. And Fleming testified that there was a fingerprint on the knife but it was excluded as being Plaintiff's. (See Exhibit H to Zareh Decl.) As a result, this Court was prevented from considering the totality of circumstances and dispositive evidence. This changes the outcome. *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 953 (9th Cir. 2010) ("[T]o establish probable cause, mere suspicion, common rumor, or even strong reason to suspect are not enough."

      Moreover, Plaintiff was unable to depose Losey and others on the concealed fiber report and the information provided to the DA with regards to the three specific witnesses referenced in that email exchange between the DA and police cheif. With respect to the malicious prosecution claim at issue was Losey's knowledge. APD interviewed a great deal of witnesses but relied on 3 witnesses to support their claim of probable cause. The evidence withheld would have yielded to a different outcome if it was produced in a timely fashion and utilized. Moreover, Plaintiff was prevented to conduct proper discovery from Fleming. She refused to produce any records after Defendants vigorous objections to coverup for Defendants.

      The newly released records reference many eyewitnesses to the stabbing and a potential suspect unaffiliated with Plaintiff.  This goes directly to the heart of probable cause issue. Plaintiff did not have the opportunity to conduct any discovery from these witnesses and potential suspect. Plaintiff was

prevented to ask questions from Losey and Dokweiler about the events described as significant in late produced reports.

Plaintiff had no opportunity to depose this witness. Clearly Plaintiff's location and his mental and physical state is of significance in this case. This report corroborates Gleaton, McFarland, Ortega and Wilkins' statements that Plaintiff was not being responsive or communicative and being away from the location described by Wright. This Report contradicts Plaintiff's location and Paris Wright's account.

In fact the newly discovered evidence showed that others including Ortega had motive. Ashley Alvarez was a potential witness to the stabbing. Had Plaintiff had the opportunity to conduct a proper discovery Plaintiff would have learned about what she knew or saw and when she communicated that information to APD or Losey. These witness and their information directly address the issue of probable cause, motive, opportunity, stains on Plaintiff's clothing and also are related to other issues presented at the summary judgment. A witness, unaffiliated with Plaintiff claimed accidental stabbing by Lawson's friend. That is central to the issue of probable cause.

Also central to the issue of probable cause is a witness who was worried about being charged as an accessory to murder of Lawson, the video of the events from the night of stabbing which was never produced and other witnesses who was present at the time of stabbing. Again, Plaintiff has the right to vet these statements and witness and utilize it in preparing his case. Whether this information relates to impeachment or has other values, should not matter.

**4.    Defense Counsel's Misconduct Has No Limits: After Defense Counsel Talk To Fleming At Her Deposition, She Concealed The Truth**

There is no dispute that Moriarty and Robinson talk to Fleming before her deposition. However, Flemings testimony vastly differs from deposition to trial. As a prosecutor she was not facing any liability in this action. She was not a defendant, and it would not have affected her either way. But, concealing the existence of the police report sent as an email marked as Exhibit 22 at trial, played a major role to Losey's defense. Losey's defense was that his false report did not play a part in the DA's decision to file charges.

At her deposition after talking to defense counsel, Fleming concealed the existence of the police report sent as an email marked at trial as Exhibit 22. To cover for the defendant, who was the son of a former investigator at the DA's office, Fleming said that she received the eyewitness report after she filed

the felony complaint. She testified that she learned about the eyewitness account after talking to Dokweiler in a meeting and essentially received the written report after it was completed and approved. To prevent the production of the records, she also claimed that her office did not keep any logs of reports as they came in and that she had no "way to break out what we may or may not have had pre-charging versus what was coming in post-charging, what was coming in pre-prelim, pre-grand jury, so I can't break that out for you. She emphasized that "I have no way to go back in time and recreate what reports we had at any particular moment."

At trial testifying before a jury and this Court, Fleming's testimony changed significantly and contradicted what she previously said. At trial, Fleming was represented by private counsel Mr. Kloeppel. As a result, Moriarty and Robinson did not have direct access to Fleming to influence her testimony. Without that influence, she testified the opposite. The gravity of facing this Court and the jury eye to eye convinced her to tell the truth. Fleming's false testimony at her deposition, came after she was counseled by Moriarty and Robinson. They assured Fleming that Plaintiff does not have the email and has no idea about the existence of the email. There is no reason for defense attorney to contact Fleming and talk to her before her deposition to discuss the "**timeline for the charging**" and **"what information [Fleming] had for charging."** (See Exhibit G to Zareh Decl. P. 8:24-3) This was solely done to influence her testimony for their own benefit.

## CONCLUSION

Based on the foregoing, this Court should impose issue sanctions finding for Plaintiff on the issue of probable cause and impose monetary sanctions of $15,000.

Dated: November 7, 2022          Respectfully Submitted,

                                  */s/ Elizabeth Zareh*
                              By: _____
                                  Elizabeth Zareh,
                                  Attorneys for Plaintiff, Kyle Zoellner

# CERTIFICTAE OF SERVICE

I, Elizabeth Zareh, certify that I am over the age of 18 years and not a party to the within action. My business address is 75 Broadway Street, Ste 202, San Francisco, CA 94111.

On November 7, 2022, I served a copy(ies) of the following document(s):

PLAINTIFF'S REPLY TO OPPOSITION TO OPPOSITION TO MOTION UNDER RULE 37 AND 11 FOR ISSUE & MONETARY SANCTIONS

on the parties to this action by placing them in a sealed envelop(s) addressed as follows:

Castillo, Moriarty, Tran & Robinson
Patrick Moriarty, Esq.
John Robinson, Esq.
75 Southgate Ave
Daily City, CA 94015
Patrick Moriarty pmoriarty@cmtrlaw.com
John Robinson  jrobinson@cmtrlaw.com

Nicholas R. Kloeppel
THE MITCHELL LAW FIRM, LLP
P.O. Drawer 1008
426 First Street
Eureka, CA 95501
Phone: (707) 443-5643
Fax: (707) 444-9586

☐ (By EMAIL) I caused to be transmitted by Internet from email address elizabeth@zarehassociates.com the document(s) to: Patrick Moriarty <PMoriarty@aghwlaw.com>

The transmission was complete and the system did not report an error message.

■ (BY CM/ECF NOTICE OF ELECTRONIC FILING: I electronically filed the documents with the Clerk of the clerk by using CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on November 7, 2022 at San Francisco, California.

*/s/ Elizabeth Zareh*

_____

Elizabeth A. Zareh