1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    KYLE CHRISTOPHER ZOELLNER,                Case No.  18-cv-04471-JSC

         Plaintiff,
8
                                               **ORDER RE: MOTION FOR**
9        v.                                    **JUDGMENT ON THE PLEADINGS**

10   CITY OF ARCATA, et al.,                    Re: Dkt. No. 412

         Defendants.
11

12

13          Before the Court is Defendants' motion for judgment on the pleadings as to the single

14   claim remaining in Mr. Zoellner's fifth amended complaint ("5AC").  (Dkt. No. 412.)[1]  Having

15   carefully considered the briefing, the Court concludes that oral argument is unnecessary, *see* N.D.

16   Cal. Civ. L.R. 7-1(b), VACATES the March 16, 2023 hearing, and GRANTS the motion.  Mr.

17   Zoellner's claim is barred by California's litigation privilege as a matter of law.

18                                    **BACKGROUND**

19          The operative 5AC asserts nine claims and names 11 Defendants.  (Dkt. No. 106.)  In April

20   2021, the district judge then presiding over the case granted in part and denied in part Defendants'

21   motion to dismiss the 5AC.  (Dkt. No. 131.)  As relevant here, the district judge denied the motion

22   to dismiss as to claim nine, styled "wrongful threat of criminal prosecution" in the 5AC but

23   construed by the judge as an intentional infliction of emotional distress ("IIED") claim.  (Dkt. No.

24   106 at 67; Dkt. No. 131 at 18.)  That claim was bifurcated and stayed.  (Dkt. No. 161; *see* Dkt. No.

25   233 at 12:15-16, 40:17-19.)  In March 2022, the district judge granted summary judgment to

26   Defendants on all live claims except the malicious prosecution claim against Mr. Losey only.

27   _____

28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

1    (Dkt. No. 233.)

2        The malicious prosecution claim proceeded to trial in October 2022.  The jury returned

3    findings favorable to Mr. Zoellner on all elements that were put to the jury.  (Dkt. Nos. 376, 377.)

4    The Court then determined, based on the trial record, that Mr. Zoellner had not proved the lack of

5    probable cause element of malicious prosecution—an element that was not put to the jury because

6    the law requires the trial judge to decide it.  (Dkt. No. 383; *see* Dkt. No. 370 at 12 (instructing jury

7    that "[t]he law requires that the trial judge, rather than the jury, decide if Mr. Zoellner has proven

8    element 3 above, whether a reasonable person in Mr. Losey's circumstances would have believed

9    that there were grounds for causing Mr. Zoellner to be prosecuted").  Thus, the trial verdict was in

10   Mr. Losey's favor.  (*See* Dkt. No. 383 at 11:24-25.)

11       The parties now turn to the bifurcated claim of wrongful threat of criminal

12   prosecution/IIED, which is asserted against all Defendants.  Mr. Zoellner alleges Defendants'

13   counsel, acting as each Defendant's agent, "attempted to extort Plaintiff by threatening him with a

14   new prosecution for the death of [David Josiah] Lawson unless Plaintiff dismissed this lawsuit, but

15   in exchange for Plaintiff's dismissal, Defendants would agree to not file any further criminal

16   charges against Plaintiff."  (Dkt. No. 106 ¶ 282.)  The 5AC refers to "four different occasions," "in

17   particular . . . December 15, 2021 and December 21, 2021."[2]  (*Id.* ¶¶ 135, 282.)  The Court lifted

18   the stay with respect to Defendants filing a motion for judgment on the pleadings, (*see* Dkt. No.

19   411 at 12:21-22), on the grounds that California's litigation privilege precludes the claim, (Dkt.

20   No. 412).

21                              **DISCUSSION**

22       "Judgment on the pleadings is properly granted when, accepting all factual allegations in

23   the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled

24

25   ─────────────────

26   [2] Magistrate judge settlement conferences were held on those two dates.  (*See* Dkt. Nos. 95, 96;
     *see also* Dkt. No. 143-1 (Mr. Zoellner's declaration in support of motion to disqualify Defendants'
     counsel, describing threats); Dkt. No. 143-2 (Mr. Zoellner's counsel's declaration in support of

27   same); Dkt. No. 411 at 5:5-23 (Mr. Zoellner's counsel representing that the claim arises out of
     statements made in a proceeding before the formerly presiding district judge, a discovery

28   proceeding before a magistrate judge, and a settlement conference before a magistrate judge).)

*United States District Court*
*Northern District of California*

1    to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)

2    (cleaned up); *see* Fed. R. Civ. P. 12(c).  Like a motion to dismiss under Federal Rule of Civil

3    Procedure 12(b)(6), a motion under Rule 12(c) challenges the legal sufficiency of the claims

4    asserted in the complaint.  *Chavez*, 683 F.3d at 1108.  "[I]t is common to apply Rule 12(c) to

5    individual causes of action." *Strigliabotti v. Franklin Res., Inc.*, 398 F. Supp. 2d 1094, 1097 (N.D.

6    Cal. 2005).

7    **I.      LITIGATION PRIVILEGE**

8            Under Section 47(b), formerly 47(2), "[a] privileged publication or broadcast is one made .

9    . . [i]n any . . . judicial proceeding."  Cal. Civ. Code § 47(b)(2).  "California's litigation privilege

10   applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or

11   other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has

12   some connection or logical relation to the action." *Graham-Sult v. Clainos*, 756 F.3d 724, 741

13   (9th Cir. 2014) (cleaned up).  As to the first element, "[t]he communication may be made outside a

14   courtroom, since many portions of a 'judicial proceeding' occur outside of open court, such as

15   settlement negotiations." *Carney v. Rotkin, Schmerin & McIntyre*, 206 Cal. App. 3d 1513, 1521

16   n.4 (1988) (cleaned up).  "When a communication meets these requirements, the privilege is

17   absolute; that is, it is unaffected by the presence of malice." *Id.* at 1521.  Unlike evidentiary

18   privileges, "which operate by excluding evidence," the litigation privilege "directly affects

19   liability." *Id.* at 1520.  It "applies to judges and other official officers, attorneys, parties, jurors,

20   and witnesses." *Id.*  "Any doubt about whether the privilege applies is resolved in favor of

21   applying it." *Finton Constr., Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 212 (2015)

22   (cleaned up).

23           "The litigation privilege . . . serves broad goals of guaranteeing access to the judicial

24   process, promoting the zealous representation by counsel of their clients, and reinforcing the

25   traditional function of the trial as the engine for the determination of truth." *Flatley v. Mauro*, 39

26   Cal. 4th 299, 324 (2006).  The privilege "afford[s] litigants and witnesses the utmost freedom of

27   access to the courts without fear of being harassed subsequently by derivative tort actions."

28   *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990) (cleaned up), as modified (Mar. 12, 1990).  The

United States District Court
Northern District of California

3

1    privilege "enhanc[es] the finality of judgments and avoid[s] an unending roundelay of litigation,

2    an evil far worse than an occasional unfair result." *Id.* at 214.

3         The privilege "immunizes defendants from virtually any tort liability (including claims for

4    fraud), with the sole exception of causes of action for malicious prosecution." *Olsen v. Harbison*,

5    191 Cal. App. 4th 325, 333 (2010). "Malicious prosecution actions are permitted because the

6    policy of encouraging free access to the courts is outweighed by the policy of affording redress for

7    individual wrongs when the requirements of favorable termination, lack of probable cause, and

8    malice are satisfied." *Silberg*, 50 Cal. 3d at 216 (cleaned up). "We recognize . . . that the

9    disallowance of derivative tort actions based on communications of participants in an earlier

10   action necessarily results in some real injuries that go uncompensated." *Id.* at 218. "But . . . that

11   is the price that is paid for witnesses who are free from intimidation by the possibility of civil

12   liability for what they say." *Id.* (cleaned up). And "in a good many cases of injurious

13   communications, other remedies aside from a derivative suit for compensation will exist and may

14   help deter injurious publications during litigation," including "State Bar disciplinary proceedings."

15   *Id.* at 218–19.

16   **II.    APPLICATION**

17        Construing the 5AC allegations in the light most favorable to Mr. Zoellner, *see Fleming v.*

18   *Pickard*, 581 F.3d 922, 925 (9th Cir. 2009), his wrongful threat of criminal prosecution/IIED

19   claim is barred by the absolute litigation privilege, *see Graham-Sult*, 756 F.3d at 741.

20        First, the alleged threats were made in a judicial proceeding because they were

21   communicated by Defendants' counsel to Mr. Zoellner during the latter's active civil case. *See*

22   *Olsen*, 191 Cal. App. 4th at 334. Second, Defendants' counsel was a participant authorized by

23   law. *See Carney*, 206 Cal. App. 3d at 1520; *e.g.*, *Finton Constr.*, 238 Cal. App. 4th at 211–13

24   (privileged statement by counsel); *Bergstein v. Stroock & Stroock & Lavan LLP*, 236 Cal. App.

25   4th 793, 814–16 (2015) (same). As to the third and fourth elements, Defendants' counsel made

26   the alleged threats to achieve their object of the litigation—that is, a resolution in Defendants'

27   favor. *See Olsen*, 191 Cal. App. 4th at 336 (noting third and fourth elements "overlap to a

28   considerable degree"). The 5AC squarely alleges Defendants' counsel "threaten[ed] [Mr.

4

1    Zoellner] with a new prosecution" to "convince him to dismiss the case."  (Dkt. No. 106 ¶¶ 282,

2    136; *see id.* ¶ 135.)  Those communications could not be more related to this case.  *See Asia Inv.*

3    *Co. v. Borowski*, 133 Cal. App. 3d 832, 842 (1982) (privileged "threat to coerce Asia into

4    settling"); *see also Olsen*, 191 Cal. App. 4th at 336 ("Had there been no litigation, these comments

5    would never have been made.").

6           Accordingly, the privilege applies.  The Court addresses Mr. Zoellner's other arguments

7    below.

8           **A.      Law of the Case**

9           Mr. Zoellner argues the formerly presiding district judge rejected the litigation privilege at

10   the motion to dismiss stage, creating law of the case.

11          The law of the case is a "discretionary" doctrine, *United States v. Lummi Indian Tribe*, 235

12   F.3d 443, 452 (9th Cir. 2000), which:

13              generally provides that when a court decides upon a rule of law, that
                decision should continue to govern the same issues in subsequent
14              stages in the same case. The doctrine expresses the practice of courts
                generally to refuse to reopen what has been decided, but it does not
15              limit courts' power.

16   *Musacchio v. United States*, 577 U.S. 237, 244–45 (2016) (cleaned up).  "The law of the case

17   doctrine does not preclude a court from reassessing its own legal rulings in the same case . . .

18   before judgment is entered or the court is otherwise divested of jurisdiction over the order."[3]

19   *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018).  "For the doctrine to

20   apply, the issue in question must have been decided explicitly or by necessary implication in the

21   previous disposition." *Lummi*, 235 F.3d at 452 (cleaned up).

22          Here, in one paragraph of Defendants' reply to their motion to dismiss, they argued the

23   alleged threats "fall within the litigation privilege."  (Dkt. No. 127 at 11 (citing *Silberg*).)  The

24   parties did not discuss the privilege at the motion hearing, (Dkt. No. 416-1), nor did the district

25

26   _____

27   [3] Mr. Zoellner does not argue, and the Court sees no good faith basis to do so, that the district
     judge's order is a decision by a higher court.  *See Askins*, 899 F.3d at 1042 ("The doctrine applies
28   most clearly where an issue has been decided by a higher court; in that case, the lower court is
     precluded from reconsidering the issue and abuses its discretion in doing so . . . .").

United States District Court
Northern District of California

United States District Court
Northern District of California

1   judge's written order address it, (Dkt. No. 131).[4]  Thus, the privilege issue was not decided

2   explicitly.  Even assuming it was decided by necessary implication of the order denying dismissal

3   as to Mr. Zoellner's wrongful threat of criminal prosecution/IIED claim, the Court will exercise its

4   discretion not to apply the doctrine.  *See Lummi*, 235 F.3d at 452.  Neither the hearing nor the

5   order mentioned the privilege.  So, to the extent the issue was decided, it was without meaningful

6   analysis and "reassess[ment]" with more robust briefing is appropriate.  *Askins*, 899 F.3d at 1042;

7   *cf. Strigliabotti*, 398 F. Supp. 2d at 1098 ("[T]hat defense counsel believes that the previous

8   motion to dismiss was erroneously decided, and erroneously presented by his co-counsel, is not a

9   persuasive reason for the Court to exercise its discretion to revisit an issue . . . .").

10      **B.      Waiver**

11      Mr. Zoellner next argues Defendants waived the privilege by failing to assert it in their

12   answer to the 5AC.

13      "A defendant may . . . raise an affirmative defense for the first time in a motion for

14   judgment on the pleadings, but only if the delay does not prejudice the plaintiff."  *Owens v. Kaiser*

15   *Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (cleaned up); *see Quigley v. Garden*

16   *Valley Fire Prot. Dist.*, 7 Cal. 5th 798, 810 (2019) ("the absolute litigation privilege . . . is an

17   affirmative defense subject to principles of forfeiture and waiver").  There is no prejudice to Mr.

18   Zoellner because "this affirmative defense would have been dispositive had [Defendants] asserted

19   it when the action was filed."  *Owens*, 244 F.3d at 713 (finding defendant's failure to plead res

20   judicata in its answer did not prejudice plaintiff).  Whether Defendants asserted the privilege in

21   their answer or at this stage, the result would be the same: Defendants are entitled to judgment as a

22   matter of law.  Moreover, because this claim has been bifurcated and stayed, the parties have not

23   invested resources in it in a way that prejudices anyone.

24      **C.      Unfairness**

25      Finally, Mr. Zoellner argues this Court has denied him due process and advocated for

26

27   ───────────────
[4] The district judge's order discussed whether "statements made by defense counsel are
28   inadmissible because they were made during a settlement conference," (Dkt. No. 131 at 15), but
     only in reference to Federal Rule of Evidence 408, not the litigation privilege.

1   Defendants by raising issues for them.

2        The Court raised the litigation privilege at a case management conference ("CMC")

3   following trial.  (Dkt. No. 411 at 5:24–10:12; *see id.* at 8:6-7 (the Court to Defendants' counsel:

4   "I'm raising that.  You didn't raise that in your CMC statement.").)  The Court noted the privilege

5   would be Defendants' burden, (*id.* at 8:14-15 ("[I]t is an affirmative defense.  It's your burden to

6   show it.")), and has held them to that burden in this Order.  Raising a legal issue that a party did

7   not raise in its CMC statement does not show unfairness or partiality.  *See Pau v. Yosemite Park &*

8   *Curry Co.*, 928 F.2d 880, 885 (9th Cir. 1991) (finding "no prejudicial misconduct" where judge's

9   "most egregious acts" *outside* the presence of the jury were "stat[ing] that he had seen better cases

10  before" and that he "would consider" motion for judgment notwithstanding the verdict but "was

11  not overly impressed with the Paus' case on liability").  Resolving Mr. Zoellner's claim would

12  involve discovery of the settlement conference magistrate judge.  Before allowing such an

13  extraordinary process, this Court has a duty to ensure the law is properly applied.

14       Earlier, the Court raised the issue of privity in its tentative ruling on one of Mr. Zoellner's

15  motions in limine, more than a month in advance of the pre-trial conference.  (Dkt. No. 299 at 2–4

16  ("The Court acknowledges that Detective Losey did not raise the privity argument in response to

17  Plaintiff's motion.  Nonetheless, the Court must apply the correct law and place the burden on Mr.

18  Zoellner [to establish issue preclusion].").)  At the pre-trial conference, the Court heard argument

19  from Mr. Zoellner's counsel, who had had the opportunity to research the issue.  (Dkt. No. 324 at

20  10:24–14:20; *see id.* at 10:24-25 (Mr. Zoellner's counsel: "I looked at the cases that were cited by

21  the Court.").)  The Court then ruled on the motion in Mr. Losey's favor.  (Dkt. No. 306 at 1–4

22  ("Mr. Zoellner has not met his burden of proving that a police officer is in privity with the

23  prosecution such that he is bound by a finding of no probable cause . . . .").)  Raising a legal issue

24  that a party did not raise in its opposition to a motion in limine does not show unfairness or

25  partiality.  Again, the Court has an obligation to correctly apply the governing law.

26       Moreover, the Court has also raised issues to Mr. Zoellner's benefit.  First, one of Mr.

27  Zoellner's motions in limine sought to exclude evidence from the criminal investigation, including

28  DNA evidence implicating Mr. Zoellner, on grounds of relevance and prejudice.  (Dkt. No. 250.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1   The evidence was likely relevant given Mr. Zoellner sought damages based on his testimony that

2   he did not stab Mr. Lawson; that is, evidence developed post-preliminary hearing showing that he

3   did stab Mr. Lawson would be relevant to his claimed emotional distress damages.  And, given he

4   was seeking millions of dollars in damages, the DNA evidence's prejudicial effect would not

5   outweigh its probative value.  But, although the Court was not persuaded by Mr. Zoellner's

6   arguments for excluding the evidence, the Court sua sponte raised the issue of whether the DNA

7   evidence was admissible at all "given that [Mr. Losey] does not have on [his] witness list a DNA

8   expert or the person who performed the DNA test."  (Dkt. No. 289 at 2.)  The Court ordered Mr.

9   Losey to brief the issue, (*id.*), and subsequently excluded Mr. Losey's Proposed Exhibits 22-26.

10  (Dkt. No. 299 at 5–7 ("The DNA evidence is not proffered in admissible form as Detective Losey

11  does not have a witness on his list competent to testify to the DNA results as substantive

12  evidence."); *see* Dkt. No. 324 at 91:7-15.)  Thus, the Court excluded evidence on a basis Mr.

13  Zoellner failed to raise.

14          Similarly, another of Mr. Zoellner's motions in limine sought to exclude Mr. Losey's

15  expert on grounds of scope and summarizing witness testimony.  (Dkt. No. 246.)  Again, the Court

16  was unpersuaded by those arguments.  But the Court sua sponte raised the issue of whether the

17  expert's report was admissible given that it may have opined on the legal question of probable

18  cause.  (Dkt. No. 299 at 4 ("[A]lthough not raised by Mr. Zoellner, an expert witness cannot give

19  an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." (cleaned up)).)

20  The Court ordered Mr. Losey to file the full report for the Court's review, (*id.* at 5), and

21  subsequently excluded it.  (Dkt. No. 306 at 4 ("The report . . . is excluded because it opines on an

22  ultimate issue of law").)  Thus, the Court excluded expert testimony on a basis Mr. Zoellner failed

23  to raise.

24          Finally, when Mr. Zoellner put District Attorney Maggie Fleming on his witness list, Mr.

25  Losey objected that Ms. Fleming was never disclosed under Federal Rule of Civil Procedure

26  26(a).  (Dkt. No. 264 at 8; *see* Dkt. Nos. 290, 294.)  The Court ruled:

27          The Court will allow Mr. Zoellner to call District Attorney Maggie
            Fleming as a witness at trial. It was not until April 2022—after
28          summary judgment was decided—that Defendants produced an email

from Ms. Fleming in which she states that she filed the charges in part because of Detective [Losey's] inaccurate statement. While Mr. Zoellner certainly could have taken Ms. Fleming's deposition prior to the close of fact discovery, this email is highly relevant to the causation element of Mr. Zoellner's malicious prosecution claim and thus makes Ms. Fleming an even more central witness. The late production of the email justifies Mr. Zoellner's late disclosure of Ms. Fleming.

(Dkt. No. 297 at 3.)  Thus, despite Mr. Zoellner not disclosing or deposing Ms. Fleming—*the* District Attorney whose decision to file murder charges was at the heart of Mr. Zoellner's malicious prosecution claim—during fact discovery, the Court allowed Mr. Zoellner to depose her and call her as a witness.  (*See* Dkt. No. 324 at 37–38.)

* * *

In sum, the absolute litigation privilege precludes Mr. Zoellner's wrongful threat of criminal prosecution/IIED claim, and Defendants are entitled to judgment as a matter of law on this claim.  *See Graham-Sult*, 756 F.3d at 741; *Chavez*, 683 F.3d at 1108.

### CONCLUSION

Defendants' motion is GRANTED.

This Order disposes of Docket No. 412.

**IT IS SO ORDERED.**

Dated: March 10, 2023

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

9